# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### DELTA DIVISION

| | |
|---|---|
| STATES OF TENNESSEE, ARKANSAS, ALABAMA, FLORIDA, GEORGIA, IDAHO, INDIANA, IOWA, KANSAS, MISSOURI, NEBRASKA, NORTH DAKOTA, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA, UTAH, and WEST VIRGINIA, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 2:24-cv-84 DPM U.S. District Judge D. P. Marshall U.S. Magistrate Judge Edie R. Ervin |
| EQUAL EMPLOYMENT OPPOR- TUNITY COMMISSION, | |
| *Defendant.* | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A § 705 STAY AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ......................................................................1

BACKGROUND .......................................................................2

   I.   Lawmakers Pass the PWFA to Promote Safe Employee
       Pregnancies, Not Abortion..........................................2

   II.   EEOC Proposes a Rule That Would Require Employers to
       Accommodate Workers' Abortions Prohibited by State Law.....4

   III.  EEOC Finalizes Its Abortion-Accommodation Mandate............6

   IV.  Plaintiff States' Lawsuit and Requested Preliminary Relief.....11

LEGAL STANDARD...............................................................11

SUMMARY OF ARGUMENT .................................................12

ARGUMENT ..........................................................................13

   I.   Plaintiff States Are Likely to Succeed on the Merits.................13

       A. The Final Rule Exceeds EEOC's Statutory Authority. ........14

       B. The Final Rule Violates the U.S. Constitution. ...................25

       C. The Final Rule is Arbitrary and Capricious..........................28

   II.  Plaintiff States Face Irreparable Harm
       Absent Preliminary Relief.........................................32

   III. The Balance of the Equities and
       Public Interest Factors Weighs in Plaintiff States' Favor............34

       CONCLUSION ................................................................35

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative v. Elenis,*
   600 U.S. 570 (2023) ....................................................................... 27, 30

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.,*
   594 U.S. 758 (2021) ....................................................................... 24, 35

*Ark. State Conf. NAACP v. Ark. Bd. of Apportionment,*
   86 F.4th 1204 (8th Cir. 2023)................................................................22

*Ark. Times LP v. Waldrip,*
   37 F.4th 1386 (8th Cir. 2022)................................................................17

*BP p.l.c. v. Mayor & City Council of Baltimore,*
   141 S. Ct. 1532 (2021) ........................................................................18

*Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc.,*
   467 U.S. 837 (1984) .............................................................................24

*Chisom v. Roemer,*
   501 U.S. 380 (1991) .............................................................................23

*City of Boerne v. Flores,*
   521 U.S. 507 (1997) .............................................................................26

*Corning Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.,*
   562 F. Supp. 279 (E.D. Ark. 1983) .......................................................11

*Dakotans for Health v. Noem,*
   52 F.4th 381 (8th Cir. 2022)..................................................................34

*Dataphase Sys., Inc. v. C L Sys., Inc.,*
   640 F.2d 109 (8th Cir. 1981) (en banc ..................................................12

*Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.,*
   9 F.4th 803 (8th Cir. 2021)........................................................ 14, 19, 20

*Digit. Realty Tr., Inc. v. Somers*,
583 U.S. 149 (2018) ...............................................................16

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) ....................................................... *passim*

*Doe v. C.A.R.S. Prot. Plus, Inc.*,
527 F.3d 358 (3d Cir. 2008).................................... 17, 20, 21

*Ducharme v. Crescent City De´ja`Vu, L.L.C.*,
406 F. Supp. 3d 548 (E.D. La. 2019) ............................ 17, 20

*Dunlap v. Liberty Nat. Prods., Inc.*,
878 F.3d 794 (9th Cir. 2017)....................................................20

*EEOC v. Houston Funding II, Ltd.*,
717 F.3d 425 (5th Cir. 2013)....................................... 15, 16

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ...............................................................21

*First Premier Bank v. U.S. Consumer Fin. Prot. Bureau*,
819 F. Supp. 2d 906 (D.N.D. 2011) .......................................35

*Fulton v. City of Philadelphia*,
593 U.S. 522 (2021) ...................................................... 28, 30

*Garcia v. San Antonia Metro. Transit Auth.*,
469 U.S. 528 (1985) ...............................................................25

*Geduldig v. Aiello*,
417 U.S. 484 (1974) ...............................................................26

*Goldstein v. SEC*,
451 F.3d 873 (D.C. Cir. 2006) ...............................................24

*Green v. Nat'l Steel Corp., Midwest Div.*,
197 F.3d 894 (7th Cir. 1999)...................................................21

*Gregory v. Ashcroft*,
501 U.S. 452 (1991) ...............................................................25

*Hood v. Midwest Sav. Bank*,
    95 F. Appx. 768 (6th Cir. 2004)......................................................29

*In re Union Pac. R.R. Emp. Pracs. Litig.*,
    479 F.3d 936 (8th Cir. 2007)..........................................................19

*Iowa League of Cities v. E.P.A.*,
    711 F.3d 844 (8th Cir. 2013)..........................................................13

*Iowa Utilities Bd. v. F.C.C.*,
    109 F.3d 418 (8th Cir. 1996)..........................................................33

*Jones v. Jegley*,
    947 F.3d 1100 (8th Cir. 2020)........................................................11

*Jones v. Sumser Retirement Village*,
    209 F.3d 851 (6th Cir. 2000)..........................................................20

*Krauel v. Iowa Methodist Medical Center*
    95 F.3d 674 (8th Cir. 1996)..................................................... 18, 19

*Kentucky v. Biden*,
    23 F.4th 585 (6th Cir. 2022) .................................................. 33, 35

*Kentucky v. Biden*,
    57 F.4th 545 (6th Cir. 2023)..........................................................33

*Kimel v. Florida Bd. of Regents*,
    528 U.S. 62 (2000) .......................................................................26

*League of Women Voters v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ..........................................................35

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    591 U.S. 657 (2020) .....................................................................28

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
    584 U.S. 453 (2018) .....................................................................25

*Nat'l Fed'n of Indep. Bus. v. OSHA*,
    142 S. Ct. 661 (2022) ...................................................................35

iv

*Nat'l Inst. Of Fam. & Life Advocs. v. Becerra*,
  585 U.S. 755 (2018) ........................................................... 27, 34

*Nat'l Telephone Co-op Ass'n v. FCC*,
  563 F.3d 535 (D.C. Cir. 2009) ...........................................31

*New York v. United States*,
  505 U.S. 144 (1992) ...........................................................29

*Northport Health Servs. of Arkansas, LLC v. U.S. Dep't of Health & Hum.,Res.*,
  438 F. Supp. 3d 956 (W.D. Ark. 2020).................................30

*Pitman Farms v. Kuehl Poultry, LLC*,
  48 F.4th 866 (8th Cir. 2022).................................................21

*Planned Parenthood of Se. Pa. v. Casey*,
  505 U.S. 833 (1992) ...........................................................15

*R.J. Reynold Tobacco Co. v. City of Edina*,
  60 F. 4th 1170 (8th Cir. 2023)...............................................25

*Robinson v. Shell Oil Co.*,
  519 U.S. 337 (1997) ...........................................................19

*Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Engineers*,
  531 U.S. 159 (2001) ...........................................................18

*Spees v. James Marine, Inc.*,
  617 F.3d 380 (6th Cir. 2010).................................................2

*Texas v. Becerra*,
  89 F.4th 529 (5th Cir. 2024).................................................19

*Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.*,
  5 F.4th 666 (6th Cir. 2021)...................................................18

*Turic v. Holland Hosp., Inc.*,
  85 F.3d 1211 (6th Cir. 1996)................................... 17, 20, 21

*Union Pac. R. Co. v. U.S. Dep't of Homeland Sec.*,
    738 F.3d 885 (8th Cir. 2013)................................................24

*United States v. Gaye*,
    902 F.3d 780 (8th Cir. 2018)................................................29

*United States v. Vangh*,
    990 F.3d 1138 (8th Cir. 2021)..............................................14

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013) ...........................................................24

*Util. Air Regul. Grp. v. EPA*,
    573 U.S. 302 (2014) ...........................................................24

*Van Buren v. United States*,
    593 U.S. 374 (2021) ...........................................................22

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
    576 U.S. 200 (2015) ...........................................................27

*Washington v. Reno*,
    35 F.3d 1093 (6th Cir. 1994)................................................35

*West Virginia v. EPA*,
    142 S. Ct. 2587 (2022) ........................................................24

*West Virginia v. EPA*,
    669 F. Supp. 3d. 781 (D.N.D. 2023) ............................. 29, 33

*Young v. United Parcel Serv., Inc.*,
    575 U.S. 206 (2015) .............................................................2

**Statutes**

5 U.S.C. § 704 ......................................................................13

5 U.S.C. § 705 .......................................................... 11, 12, 35

5 U.S.C. § 706(2) ...................................................... 13, 28

29 U.S.C. § 2611(2)(A).............................................................2

29 U.S.C. § 2612(a)(1)(D) ...................................................2

42 U.S.C. § 12112(a) ..........................................................2

42 U.S.C. § 2000e(k) ................................................... 19, 22

42 U.S.C. § 2000gg-1 .......................................................1, 7

42 U.S.C. § 2000gg-1(1) .............................................. 16, 20

42 U.S.C. § 2000gg-1(3) ....................................................4

42 U.S.C. § 2000gg-1(4) ..................................................14

42 U.S.C. § 2000gg-3 ........................................................4

42 U.S.C. § 2000gg(4) ................................................. 16, 20

Pub. L. No. 111-117, § 508(d)(1), 123 Stat 3034, 3280 ........................22

Pub. L. No. 117-103, §§ 506-507, 136 Stat. 49, 496 ...........................22

Ark. Code Ann. § 5-61-304 ..............................................33

Tenn. Code Ann. § 39-15-213 ...........................................33

Tenn. Code Ann. § 39-15-214 ...........................................33

**Rules**

Federal Rule of Civil Procedure 65(c) ..................................11

**Regulations**

29 C.F.R. § 1636.3(a) ........................................................7

29 C.F.R. § 1636.3(a)(2) ....................................................7

88 Fed. Reg. 54,714 (Aug. 11, 2023) ....................................5

*Implementation of the Pregnant Workers Fairness Act*,
   89 Fed. Reg. 29,096 (Apr. 19, 2024) ............................................ *passim*

**Other Authorities**

1978 U.S.C.C.A.N. 4766 ................................................................................17

1978 U.S.C.C.A.N. 4749 ................................................................................17

*Black's Law Dictionary* ....................................................................... 15, 16

H.R. Rep. No. 95–1786 ................................................................................17

H.R. Rep. No. 95-948 ...................................................................................21

*Miller-Keane Encyclopedia and Dictionary* ...........................................16

*Oxford New American Dictionary* .................................................... 15, 16

*Stedmans Medical Dictionary* 1470 (Nov. 2014) ................................7, 16

## INTRODUCTION

Congress passed the Pregnant Workers Fairness Act of 2022 (PWFA or Act) with the laudable goal of ensuring that pregnant employees need not choose between keeping their jobs and the health of their pregnancies and unborn children.  Due to its focus on pregnant women, the Act never references abortion.  Instead, it requires employers to accommodate "known limitations" of pregnancy and "related medical conditions," 42 U.S.C. § 2000gg-1—terms that plainly exclude voluntary abortion procedures that terminate fetal life, rather than address maternal health.  This text aligns with uniform assurances of the Act's sponsors that "under the [PWFA] … the EEOC, could not—could not—issue any regulation that requires abortion leave, nor does the act permit the EEOC to require employers to provide abortions in violation of State law."[1]

Yet by a 3-2 vote, the unelected heads of the Equal Employment Opportunity Commission (EEOC) have done just that.  *See* EEOC, *Implementation of the Pregnant Workers Fairness Act*, 89 Fed. Reg. 29,096 (Apr. 19, 2024). The challenged Final Rule requires swaths of employers—including Plaintiff States—to provide accommodations for employee abortions that are illegal under state law.  EEOC's mandate takes effect on June 18, 2024, requiring significant compliance activities and expenses in the meantime.  Plaintiff States thus seek preliminary relief from the Final Rule pending review.

---

[1]  168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022) (statement of Sen. Casey), https://perma.cc/LX9A-BBGV.

1

# BACKGROUND

## I.    Lawmakers Pass the PWFA to Promote Safe Employee Pregnancies, Not Abortion.

A.    Approximately 47% of the American workforce are women.  In many states, like Arkansas and Tennessee, women comprise over half of the workforce.  And many of these women will be pregnant during their careers.

Prior to the PWFA, though, federal law provided only limited support for pregnant workers.  The Pregnancy Discrimination Act of 1978 (PDA) amended Title VII to clarify that adverse actions against pregnant employees could sometimes constitute unlawful sex discrimination.  But the PDA requires employers to provide accommodations to pregnant employees only if accommodations are available to comparator employees whose ability to work is limited for reasons unrelated to pregnancy.  *See Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 229-30 (2015).  The Americans with Disabilities Act (ADA), for its part, only requires accommodations for the complicated pregnancies that count as a qualifying disability.  42 U.S.C. § 12112(a); *see Spees v. James Marine, Inc.*, 617 F.3d 380, 396 (6th Cir. 2010) (collecting cases).  And while the Family Medical Leave Act allows some pregnant or post-partum employees to take up to twelve weeks of unpaid leave, it excludes many others from its limited scope.  29 U.S.C. §§ 2611(2)(A), 2612(a)(1)(D).

Recognizing this gap, many jurisdictions—including eight Plaintiff States—have passed laws requiring employers to accommodate worker

2

pregnancies.  *See* 89 Fed. Reg. at 29,170 tbl. 1 (citing laws).  Still, nearly half of the States do not require pregnancy accommodations beyond federal law.

B.      Against this backdrop, Congress passed the PWFA to provide simple, "commonsense accommodations"—like extra restroom breaks or permission to work while seated—to pregnant workers.[2]  In their 2021 introduction of the PWFA, Senators Bob Casey and Bill Cassidy explained that such accommodations would help "to ensure a healthy pregnancy and a healthy baby." *Id*  Other sponsors stressed that the PWFA meant women would not "have to choose" between continued employment and "their baby's health."  167 Cong. Rec. H2346 (daily ed. May 14, 2021) (statement of Rep. Carolyn Maloney). The PWFA's pro-family intent to promote healthy pregnancies permeates Congress's deliberations.  *See* Compl. ¶¶ 51-53 (collecting statements).

The lead-up to the PWFA's passage shows just as clearly that the law *does not* require employers to accommodate employee abortions.  Co-sponsor Senator Casey emphasized that EEOC "could not—could not—issue any regulation that requires abortion leave," "nor  . . . require employers to provide abortions in violation of State law."  168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022).  Lead co-sponsor Senator Cassidy likewise "reject[ed] the characterization that [the PWFA] would do anything to promote abortion." *Id.*  Senator

---

[2] Bob Casey, *Casey, Cassidy Introduce Bipartisan Pregnant Workers Fairness Act, Propose Protections Against Workplace Discrimination* (Apr. 29, 2021), https://perma.cc/J2NQ-J8AA.

3

Steve Daines echoed that statement on the day the PWFA passed, adding, "Senator Casey's statement reflects the intent of Congress in advancing the [PWFA] today.  This legislation should not be misconstrued by EEOC or Federal courts to impose abortion-related mandates on employers, or otherwise to promote abortions, contrary to the intent of Congress."  168 Cong. Rec. S10081 (daily ed. Dec. 22, 2022).

C.     The PWFA's enacted text reflects Congress's clear purpose to protect worker pregnancies, not abortions.  Relevant here, the PWFA requires employers "to make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions" of a pregnant worker. 42 U.S.C. § 2000gg-1(3).  The PWFA's anti-retaliation provision likewise bars covered employers from taking adverse action against any employee who requests an accommodation "to the known limitations related to the pregnancy, childbirth, or related medical conditions."  *Id.* § 2000gg-1(5).  The PWFA nowhere requires employers to provide accommodations for abortions, nor even references such accommodations.

## II.   EEOC Proposes a Rule That Would Require Employers to Accommodate Workers' Abortions Prohibited by State Law.

The PWFA charged EEOC with adopting regulations implementing the PWFA.  42 U.S.C. § 2000gg-3.  Yet against the statute's text and history, EEOC proposed a rule that would require covered employers—including

States—to accommodate elective abortions as a "medical condition" related to pregnancy.  88 Fed. Reg. 54,714, 54,774 (Aug. 11, 2023) (Proposed Rule). The Proposed Rule did not explain how the ordinary meaning of "medical condition" could include a voluntary procedure to terminate a healthy pregnancy. Nor did it address the fact that its approach would force States in their sovereign capacity to facilitate elective abortions state law prohibits.

The Proposed Rule's inclusion of abortion accommodations generated over 54,000 comments in opposition.  *See* 89 Fed. Reg. at 29,104.  Plaintiff Tennessee's comment letter, joined by nineteen co-signing States, argued that the Proposed Rule lacked statutory authority, violated the U.S. Constitution, and was arbitrary and capricious in violation of the APA.  *See generally* Ex. B to Complaint, Tenn. Comment.  Several commenters agreed.  *See* Complaint ¶¶ 73-82 (collecting comments).  Members of Congress likewise objected that EEOC was exceeding its power under the PWFA.  Senator Cassidy stated that EEOC had "ignored the statute and substituted its views on abortion for those of Congress."[3]  Similarly, the House Committee on Education and the Workforce commented that the "PWFA does not apply to [a]bortions" and rebuked EEOC for "issu[ing] regulations contrary to the statute itself."[4]

---

[3] Sen. Bill Cassidy, Cmt. Letter 1 (Sept. 29, 2023), https://perma.cc/L4F8-K2K6.

[4] The Hon. Virginia Foxx, Cmt. Letter 1-2 (Oct. 10, 2023), https://perma.cc/YY42-FECW (capitalization altered).

Senator Braun raised concerns with EEOC's applying its abortion-accommodation mandate to States.  Noting that the Supreme Court in *Dobbs*[5] "reserve[d] to the States the ability" to regulate abortion, Senator Braun urged EEOC to "harmonize the Eleventh Amendment" with the Proposed Rule by declining to "compel States or entities within States to violate law that protects life."[6]  These concerns map onto a May 2021 letter from the U.S. Department of Justice warning that applying the PWFA to States may violate Section 5 of the Fourteenth Amendment—analysis the Proposed Rule ignores.  *See* Ex. C to Complaint, DOJ Section 5 Letter.

## III.   EEOC Finalizes Its Abortion-Accommodation Mandate.

By a divided 3-2 vote, EEOC issued its final rule for publication on April 19, 2024.  *See* Final Rule, 89 Fed. Reg. 29,096.

Despite overwhelming public criticism of EEOC's proposal, EEOC's Final Rule adopts a new mandate requiring employers to accommodate employees' abortions.  *See id.* at 29,104 (discussing "inclusion of abortion in the definition of 'pregnancy, childbirth, or related medical conditions'" (capitalization altered)).  The Final Rule also prohibits retaliation and coercion, which EEOC summarizes as conduct "reasonably likely to interfere with the exercise or enjoyment of PWFA rights."  *Id.* at 29,148.  The Rule moreover adds a

---

[5] *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022).
[6] The Hon. Mike Braun, Cmt. Letter 2 (Oct. 10, 2023), https://perma.cc/7YMZ-JXEF.

prohibition on "harassment" not found in the PWFA, seemingly to encompass actions that do not "rise to the level of unlawful retaliation." *Id*. at 29,216 & n.185.

EEOC acknowledges that the PWFA is silent on abortion. *Id.* at 29,111. It nonetheless finds authority to require abortion accommodations in employers' duty under the PWFA to "make reasonable accommodation[s] to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee" by adopting an expansive interpretation or "related medical conditions." *See id.* at 29,183 (citing 42 U.S.C. § 2000gg-1); *see also* 29 C.F.R. § 1636.3(a).  To reach that result, EEOC says the term "limitation" can include "an impediment or problem" like "a need or a problem related to maintaining the health of the employee."  89 Fed. Reg. at 29,136, 29,183 (citing 29 C.F.R. § 1636.3(a)(2)).  From there, EEOC reasons that because abortion involves "seeking health care related to pregnancy," the act of "having or choosing not to have an abortion" falls within the PWFA's coverage. *Id.* at 29,183, 29,191 (citing 29 C.F.R. § 1636.3(a)).

EEOC fails to grapple with the statutory reference to "medical c*onditions*," or the definition of "known limitation" as a "physical . . . *condition*"— terms that plainly exclude a voluntary procedure that terminates a pregnancy for non-medical reasons.[7]  Instead, EEOC points to a supposedly "settled"

---

[7] *See* "Elective abortion," *Stedmans Medical Dictionary* 1470 (Nov. 2014) ("[A]n abortion without medical justification.")

interpretation of similar anti-discrimination language in Title VII, as amended by the PDA, and says Congress must have intended to carry that interpretation forward in the PWFA's accommodation regime. *Id.* at 29,106; *accord id.* at 29,191 n.23. But EEOC does not dispute that the relevant provision of Title VII is broader than the PWFA, that only a handful of pre-*Dobbs* lower court cases comprise its "settled" judicial consensus, *see id.* at 29,110, 29,152 n.296, or that the agency's prior Title VII guidance was informal because EEOC lacks authority to issue substantive rules interpreting Title VII. Nor does EEOC dispute that multiple sponsors of the bill insisted it would *not* require abortion accommodations. *Id.* at 29,109.

The Final Rule seeks to sidestep the constitutional problems with applying the Final Rule to States. Rather than identify its Section 5 power to subject States to suit for failing to accommodate elective abortions, EEOC simply asserts that States will be liable "both at law and in equity" to "the same extent . . . [as] any other public or private entity." *Id.* at 29,113, 29,182. EEOC admits that the Rule creates "conflict between PWFA and State laws" limiting abortions, yet punts to later "address[ing]" such conflicts "on a case-by-case basis." *Id.* at 29,112. EEOC nonetheless doubles down on the view that the Final Rule "does not have 'federalism implications.'" *Id.* at 29,182.

EEOC likewise shrugs off commenters' First Amendment concerns. Although acknowledging that mandating abortion accommodations and

policing "harassment" could infringe employers' and employees' protected religious-liberty rights or speech, the Final Rule says EEOC can only address such issues on a "case-by-case" basis as they arise.  *Id.* at 29,144, 29,148, 29,151, 29,220 n.206.  At the same time, EEOC puts the writing on the wall as to how its "case-by-case" analysis will proceed:  EEOC suggests that the need to enforce the Final Rule's provisions would constitute a "compelling interest" sufficient to override employers' and employees' protected rights, whether under the First Amendment or statutory protections like the Religious Freedom Restoration Act.  *Id.* at 29,150 & n.261.

EEOC grossly misreports the costs associated with its new mandate. The Final Rule declines to account for *any* added expenses in States with existing "PWFA-type statutes."  *Id.* at 29,159 & 29,173-74 tbls.3-4.  EEOC dismisses Tennessee's comment that EEOC "did not account for the fact that these State statutes do not permit accommodations for abortions" as unsupported "with data or case law."  *Id.* at 29,159.  But EEOC fails to explain what data or case law could have proven this negative, or why the Tennessee Attorney General's comment and state laws prohibiting the funding and provision of abortion were insufficient to substantiate this state-federal mismatch. As a result, EEOC excludes the costs of applying its Final Rule to nearly two-thirds (11.5 million) of the state and local governmental workforce, and over

half (61.2 million) of the private-sector workforce.  *Id.* at 29,173-74 tbls.3-4. This undercounts accommodation costs by many millions.  *Id.*

The Final Rule similarly underestimates compliance and implementation costs.  EEOC presumes that human resource officers in States with "PWFA-type statutes" will need less than an hour to understand the Final Rule's novel federal requirements, which stretch across 125 triple-column pages.  *Id.* at 29,176 tbl.9.  The Final Rule further presumes that covered entities will not "need legal advice," *id.* at 29,160, even while it repeatedly asserts that specific factual, constitutional and state-law concerns will require analysis on a "case by case" basis.  *Supra* pp. 8-9.  And even with these limits, the Final Rule predicts that covered employers will incur total one-time administrative costs of over $450 million.  89 Fed. Reg. at 29,176 tbl.9.

Commissioner Lucas dissented from EEOC's importing of "discrimination guidance into the PWFA" through its "expansive" construction of "pregnancy, childbirth, and related medical conditions."  Ex. D to Complaint, Lucas Dissent, at 4-16.  She noted that EEOC "purported to bridge the PDA and the PWFA through" this shared phrase, but that the "limited number" of cited federal cases was "not sufficient to show a 'settled consensus' such that Congress should be presumed to have known and endorsed it."  *Id.* at 6.  Furthermore, the ordinary meaning of "pregnancy, childbirth, and related medical conditions" is not ambiguous, meaning no resort to judicial canons is needed.

*Id*. at 9-12.  Due to these errors, Commissioner Lucas explained that EEOC's construction of the PWFA is not "reasonable or defensible."  *Id*. at 16.

## IV.   Plaintiff States' Lawsuit and Requested Preliminary Relief.

EEOC published the Final Rule on April 19, 2024.  Plaintiffs thereafter filed suit to set aside the abortion-accommodation mandate.  *See* Complaint, D.E. 1 (Apr. 25, 2024).  Because the Final Rule is set to take effect on June 18, 2024, Plaintiffs now seek immediate relief from EEOC's abortion-accommodation mandate pending this Court's resolution of the case.  EEOC opposes Plaintiffs' request.  On April 26, 2024, Plaintiffs conferred with EEOC's counsel and requested that EEOC stay enforcement of the Rule pending review.  EEOC's counsel responded that EEOC declined to stay enforcement.

## LEGAL STANDARD

Plaintiffs seek a stay of the Final Rule's effective date under 5 U.S.C. § 705, as well as a preliminary injunction under Federal Rule of Civil Procedure 65(c).  Both aim to "preserve status or rights" pending judicial review, § 705, and require an assessment of whether (1) a plaintiff is "likely to succeed on the merits"; (2) the plaintiff is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) the "balance of equities tip[s] in [the plaintiff's] favor"; and (4) an injunction is "in the public interest."  *Jones v. Jegley*, 947 F.3d 1100, 1104-05 (8th Cir. 2020) (citation omitted); *see Corning Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 562 F. Supp. 279, 280-81 (E.D. Ark.

1983) (same for § 705).  Where the balance of the equities "favors the movant," relief is warranted so long as a "substantial question" on the merits is involved. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

## SUMMARY OF ARGUMENT

EEOC's Final Rule flouts the PWFA, the U.S. Constitution, and the Administrative Procedure Act (APA).  To begin, PWFA's text, structure, and history demonstrate that Congress passed the PWFA to accommodate "known limitations" of "pregnancy, childbirth, and related medical conditions" so that women may maintain healthy pregnancies while working.  EEOC thus lacks authority to require accommodations for abortion procedures that may end healthy pregnancies without medical justification or violate state law.  Further, reading an abortion-accommodation mandate into the PWFA clashes with numerous other federal statutes restricting affirmative support for abortions.

The Rule also exceeds EEOC's constitutional authority.  The Rule infringes on the States' legitimate interests in regulating abortion and abrogates sovereign immunity without the justification Section 5 of the Fourteenth Amendment requires.  The Rule also co-opts employers' speech and mandates that employers accommodate abortions despite their pro-life beliefs, flouting federalism and First Amendment limits on agency power.

Finally, the Rule is arbitrary and capricious.  EEOC refused to address the Final Rule's glaring constitutional problems and instead punted to resolving compliance and legal issues on a case-by-case basis later.  Furthermore, the Rule wholly fails to account for several categories of costs arising from its novel abortion-accommodation mandate.

The unlawful rule will irreparably harm the States by derogating from their sovereignty and duly enacted abortion limits and imposing unrecoverable compliance costs.  Nor would the requested preliminary relief harm EEOC or the public interest, given that the PWFA plainly does not protect the abortion-accommodations at issue.  By contrast, a stay would further the public's interest in agencies' abiding by the law, as well as protect unborn children from elective abortions that many Plaintiff States' laws prohibit.

## ARGUMENT

## I. Plaintiff States Are Likely to Succeed on the Merits.

The APA directs courts to set aside "final agency action" that is unlawful.  5 U.S.C. §§ 704, 706(2); *see Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 863 n.12 (8th Cir. 2013).  Agencies must stay within their statutory authority, cannot act "contrary to constitutional right," and must avoid "arbitrary [or] capricious" decision-making.  5 U.S.C. § 706(2).  The Final Rule fails all three requirements.

### A.     The Final Rule Exceeds EEOC's Statutory Authority.

The text, structure, and history of the PWFA require invalidating the abortion-accommodation mandate.  EEOC's statutory position means employers must accommodate even elective procedures that violate state law.  But a voluntary procedure to end pregnancy is not a "medical condition" related to pregnancy, as PWFA's context and history confirm.

### 1.     PWFA's text forecloses the abortion-accommodation mandate.

a.     Any statutory analysis must begin—and may often end—with the text.  *See Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*, 9 F.4th 803, 806 (8th Cir. 2021); *United States v. Vangh*, 990 F.3d 1138, 1140 (8th Cir. 2021).  Here, the text of the PWFA requires employers to accommodate any "known limitation[s] … related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions."  42 U.S.C. § 2000gg-1(4).  The PWFA's text does not reference abortion, let alone authorize EEOC to require States to accommodate abortions that are *illegal* under state law.

EEOC nonetheless reads abortion into the PWFA's coverage of "related medical conditions."  This interpretation violates PWFA's text thrice over.

*First*, abortion is not a "related medical condition[]," as EEOC insists and the PWFA requires.  Because the PWFA does not define that provision, its terms carry their "ordinary meaning" in the "specific context."  *Designworks Homes*, 9 F.4th at 807.  And here, the ordinary meaning of "condition"

14

is a "state of health or physical fitness" or "illness or other medical problem." *New Oxford Am. Dictionary* 362 (3d ed. 2010). Citing several dictionaries, Commissioner Lucas similarly concluded that "medical conditions" unambiguously means "states of health or illness" and *not* "medical procedures, treatments, and issues." Lucas Dissent at 11 & nn.7-9; *accord EEOC v. Houston Funding II, Ltd.*, 717 F.3d 425, 428 n.4 (5th Cir. 2013) (similar). As the Fifth Circuit reasoned, a "condition" related to pregnancy encompasses a "physiological" state that is "initiated by pregnancy and concludes sometime after." *Houston Funding II*, 717 F.3d at 428-29.

The ordinary meaning of the term "condition" thus forecloses EEOC's unreasoned view that it encompasses "hav[ing] … an abortion." 89 Fed. Reg. 29,191. Abortion is a "procedure[]" intended to *end the condition* of being pregnant, not a "condition" in itself. *Planned Parenthood of Se. Pa. v. Casey,* 505 U.S. 833, 845 (1992); *cf.* abortion, *Black's Law Dictionary* (11th ed. 2019) ("An artificially induced termination of a pregnancy for the purpose of destroying an embryo or fetus."). As Commissioner Lucas explained, the term "medical condition" plainly does not include "specific treatments, medications, or medical procedures." Lucas Dissent at 11 n.11.

For similar reasons, the statute's reference to "known limitation" does not license EEOC's reading. EEOC claims the term "limitation" entails "[seeking] health care related to pregnancy, childbirth or a related medical

condition." 89 Fed. Reg. 29,097. But this argument ignores that the PWFA expressly defines "known limitation" as a "physical or mental condition," among other things—a phrase that excludes abortion procedures for the reasons just discussed. 42 U.S.C. § 2000gg(4). This "explicit definition" of "known limitation"—not EEOC's contrary reading—controls the analysis. *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018).

*Second*, elective abortions are not reflective of any "*medical* conditions." *See* 42 U.S.C. § 2000gg-1(1) (emphasis added). The term "medical" generally references "the diagnosis and treatment of disease and maintenance of health. *Houston Funding II*, 717 F.3d at 428 n.4 (citing *Miller-Keane Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health* (7th ed. 2003)); *see* "Medical," *New Oxford Am. Dictionary* 1087 (3d ed. 2010) ("of or relating to the . . . treatment of illness and injuries"); "Medicine," *Black's Law Dictionary* (11th ed. 2019) ("The scientific study and practice of preserving health and treating disease or injury."). But elective procedures often terminate fetal life for reasons unrelated to maternal health—not to address any "medical condition" related to a woman's pregnancy. *See* "Elective abortion," *Stedmans Medical Dictionary* 1470 (Nov. 2014) ("[A]n abortion without medical justification."). Plaintiff States' laws reflect this important distinction by prohibiting elective abortions yet allowing abortions when

16

medically necessary to prevent specified risks to the life or health of a pregnant woman.  *See* Complaint ¶¶ 14-35 (citing statutes).

*Third*, the *ejusdem generis* canon undermines EEOC's atextual interpretation of "related medical conditions."  Under that canon, "when general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."  *Ark. Times LP v. Waldrip*, 37 F.4th 1386, 1393 (8th Cir. 2022) (en banc) (citation omitted).  Here, the general term "related medical condition[]" refers to conditions like "pregnancy" and "childbirth."  Reading this category to include procedures that terminate pregnancy and unborn children's lives turns the statute on its head.

b.     Against all this, EEOC offers the supposedly "settled" understanding that the term "related medical condition" in Title VII includes abortion procedures.  89 Fed. Reg. 29,106.  But EEOC's so-called consensus comprises a single PDA House Report and three nonbinding lower-court cases.  *See id.* at 29,191 & n.26[8]; H.R. Rep. No. 95–1786, at 4 (1978), as reprinted in 95th Cong., 2d Sess. 4, 1978 U.S.C.C.A.N. 4749, 4766.

This "smattering of lower court opinions" cannot support the inference that "Congress knew of and endorsed" EEOC's expansive construction of the

---

[8] Citing *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008); *Turic v. Holland Hosp., Inc.*, 85 F.3d 1211, 1214 (6th Cir. 1996); *Ducharme v. Crescent City De´ja` Vu, L.L.C.*, 406 F. Supp. 3d 548, 556 (E.D. La. 2019).

17

term "related medical conditions." *BP p.l.c. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1541 (2021).  Rather, courts "must exercise 'extreme care' in determining whether Congress has authoritatively agreed with an agency's interpretation of a statute." *Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 5 F.4th 666, 673 (6th Cir. 2021) (quoting *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Engineers*, 531 U.S. 159, 169 (2001)). In Commissioner Lucas's words: "the Commission never articulates why or how this handful of opinions represents a sufficient consensus"; rather, "the state of the caselaw" demonstrates "the exact opposite" of a settled consensus. Lucas Dissent at 6.  Regardless, EEOC cannot "ignore clear statutory language on the ground that other courts have done so." *See BP p.l.c.*, 141 S. Ct. at 1541.  "That is all the more true where . . . the agency's interpretation is both textually implausible and constitutionally dubious." *Tiger Lily, LLC*, 5 F.4th at 673.

Worse still for EEOC, its inference runs up against binding Eighth Circuit precedent, which have already read the PDA's reference to "related medical conditions" as Plaintiff States ask.  In *Krauel v. Iowa Methodist Medical Center*, the Eighth Circuit held that "'[r]elated medical conditions,' a general phrase, . . . should be understood as referring to conditions related to 'pregnancy' and 'childbirth,' specific terms, unless the context of the PDA dictates otherwise."  95 F.3d 674, 679 (8th Cir. 1996).  Because the Eighth Circuit

18

determined that the PDA's "plain language" did not so dictate, it concluded the PDA did not cover discrimination based on infertility because "[p]regnancy and childbirth, which occur after conception, are strikingly different from infertility, which prevents conception." *Id.*; *see also In re Union Pac. R.R. Emp. Pracs. Litig.,* 479 F.3d 936, 942 (8th Cir. 2007) (applying this reasoning to hold that contraception is not a "related medical condition" because "contraception prevents pregnancy from even occurring"). The Eighth Circuit's prior analysis applies with equal force here: Pregnancy and childbirth, which produce new life, are "strikingly different" from abortion, which terminates a conceived child.

Even taken on their own terms, EEOC's cited cases do not support its interpretation. For one, each referenced abortion as protected constitutional right—reasoning no longer valid after the "sea change in the law" governing abortion following *Dobbs*. *Texas v. Becerra*, 89 F.4th 529, 541 (5th Cir. 2024). Moreover, each case considers abortion in the context of the PDA. But the PDA's text differs materially from the PWFA's. *See Designworks Homes*, 9 F.4th at 807 (requiring consideration of "the specific context in which th[e] language is used" (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997))). Most relevant, the PDA extends beyond "medical conditions" to all "women *affected by* pregnancy." 42 U.S.C. § 2000e(k) (emphasis added). EEOC's cases relied on legislative history indicating that "affected

19

by" was intended to include abortion.  *See Doe*, 527 F.3d at 364; *Turic*, 85 F.3d at 1214; *Ducharme*, 406 F. Supp. 3d at 555.  The PWFA, by contrast, requires an employee to have a "physical or mental condition" to qualify for an accommodation.  *See* 42 U.S.C. §§ 2000gg(4), 2000gg-1(1).  And although the PWFA, like Title VII, uses the phrase "pregnancy, childbirth, or related medical conditions," it only requires employers to accommodate "known limitations related to" those conditions.  42 U.S.C. §2000gg-1(1).

This last difference reflects that the "broader context[s] of the statute[s] as a whole" are different.  *Designworks Homes*, 9 F.4th at 807.  The PDA is an anti-discrimination statute and the PWFA is an accommodation statute. "[T]here is a basic and logical, but significant, distinction between antidiscrimination and accommodation requirements."  Lucas Dissent at 12 n.13. The former prohibit conduct that treats one employee worse than others largely without cost considerations, while the latter impose an affirmative obligation to make certain accommodations—*i.e.*, treat covered employees better than the default—that are balanced against the burdens to employers.  *Id.* It makes sense that a statute proscribing conduct would sweep more broadly than a statute mandating that an employer provide some with more favorable treatment.   As numerous courts have recognized, "[a] termination claim

20

differs in kind and date from an accommodation claim." *Jones v. Sumser Retirement Village*, 209 F.3d 851, 854 (6th Cir. 2000).[9]

These textual and structural differences track the two statutes' distinct legislative histories. During discussion of the PDA, legislators indicated that "no employer may, for example, fire or refuse to hire a woman simply because she has exercised her right to have an abortion." H.R. Rep. No. 95-948, at 7 (1978). EEOC's cases rely on this legislative history. *See, e.g.*, *Doe*, 527 F.3d at 364; *Turic*, 85 F.3d at 1214. Here, though, the legislative history of the PWFA uniformly indicates that key legislators expressly *rejected* its application to abortion. *See supra* p. 3.

### 2. PWFA's context forecloses the abortion-accommodation mandate.

The Final Rule also creates conflict between the PWFA and Congress's treatment of abortion across federal law. It is a "fundamental canon of statutory construction that the words of a statute must be read … with a view to their place in the overall statutory scheme." *Pitman Farms v. Kuehl Poultry, LLC*, 48 F.4th 866, 877 (8th Cir. 2022) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). The canon applies with especial

---

[9] *See also Dunlap v. Liberty Nat. Prods., Inc.*, 878 F.3d 794, 798 (9th Cir. 2017) ("[A] failure-to-accommodate claim 'is analytically distinct from a claim of disparate treatment or impact under the ADA.'"); *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) ("[T]he two types of claims are analyzed differently under the law.").

strength to statutes that were "passed in the same legislative session" or that "address the same issue." *Id.*

In this case, Congress passed around one dozen provisions with the PWFA that barred appropriated monies and federal entities from supporting, requiring, performing, or facilitating abortions. *See* Ex. B to Complaint, Tenn. Comment, at 3 n.1 (collecting statutes). For example, the longstanding Hyde and Weldon Amendments limit the federal government's ability to fund or mandate the provision of abortions outside of certain medically related scenarios. *See* Consol. Appropriations Act of 2022, Pub. L. No. 117-103, §§ 506-507, 136 Stat. 49, 496; Consol. Appropriations Act of 2010, Pub. L. No. 111-117, § 508(d)(1), 123 Stat 3034, 3280. And federal statutes that address abortion counsel against abortion mandates. For instance, Title VII specifies that employers need not offer abortion coverage through their insurance plans. 42 U.S.C. § 2000e(k). These contextual considerations belie that EEOC may force States to effectively subsidize employee abortions.

### 3.    PWFA's history forecloses the abortion-accommodation mandate.

Although the court need not consider the PWFA's legislative history to rule in Plaintiff States' favor, *see Ark. State Conf. NAACP v. Ark. Bd. Of Apportionment*, 86 F.4th 1204, 1213-14 (8th Cir. 2023), it is "extra icing on a cake already frosted" by the PWFA's text and context. *Van Buren v. United States*, 593 U.S. 374, 396 (2021) (citation omitted). As mentioned, the

sponsors of the PWFA uniformly rejected the notion that the statute could be used for this purpose, instead claiming that "under the [PWFA], the EEOC, could not—could not—issue any regulation that requires abortion leave, nor does the act permit the EEOC to require employers to provide abortions in violation of State law," and rejecting "the characterization that [the PWFA] would do anything to promote abortion." [10]

These statements drew no stated opposition from any member of Congress.  But given abortion's controversial status, "if Congress had such an intent" to adopt a "sweeping" and "unorthodox" abortion-accommodation regime, surely "at least some of the Members would have identified or mentioned it at some point." *Chisom v. Roemer*, 501 U.S. 380, 396 & n.23 (1991) (citation omitted).  Instead, Senator Daines indicated that Senator Casey's no-abortion statement "reflects the intent of Congress."  168 Cong. Rec. S10081 (daily ed. Dec. 22, 2022).  Other members of Congress emphasized that the purpose of the PWFA was to help ensure healthy pregnancies and healthy babies—the opposite of promoting abortion.  *See* Compl. ¶¶ 51-53.

### 4.    EEOC's interpretation warrants no deference.

Even were the PWFA ambiguous in some respects, EEOC could not use administrative deference to smuggle in its novel abortion-accommodation

---

[10] 168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022) (statement of Sen. Casey), https://perma.cc/LX9A-BBGV; *id*. (statement of Sen. Cassidy).

mandate.  The major-questions doctrine requires "clear congressional author-
ization" before an agency may decide an issue of great "economic and political
significance." *West Virginia v. EPA*, 142 S. Ct. 2587, 2608-09 (2022).  This
standard applies to abortion regulations, which "concern matters of great so-
cial significance and moral substance." *Dobbs*, 597 U.S. at 300.  So too, EEOC
needs "exceedingly clear" language to support "alter[ing] the balance between
federal and state power" by requiring States to facilitate abortions their laws
make illegal. *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594
U.S. 758, 764 (2021) (per curiam) (cleaned up).  EEOC acknowledges the stat-
ute is silent as to abortion, 89 Fed. Reg. at 29,111, meaning it fails both clear-
statement tests.

Further, "[c]onstitutional avoidance trumps . . . *Chevron*."  *Union Pac. R.
Co. v. U.S. Dep't of Homeland Sec.*, 738 F.3d 885, 893 (8th Cir. 2013) (dis-
cussing *Chevron U.S.A. Inc. v. Natural Res.Defense Council, Inc.*, 467 U.S.
837 (1984)).  EEOC's interpretation raises a panoply of constitutional prob-
lems. *See infra* I.B.  Moreover, "an agency interpretation that is 'inconsisten[t]
with the design and the structure of the statute as a whole' . . . does not merit
deference." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (quoting
*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013)).  Again, the
PWFA's language and structure indicate that Congress designed the PWFA to
promote *healthy* pregnancies.  Accordingly, EEOC's interpretation is "utterly

unreasonable and thus impermissible" even at *Chevron*'s second step. *Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006) (cleaned up).

### B.    The Final Rule Violates the U.S. Constitution.

The Final Rule is further unlawful because it contravenes federalism, Section 5 of the Fourteenth Amendment, and the First Amendment.

*First*, EEOC's Final Rule flouts the U.S. Constitution's system of "dual sovereignty between the States and the Federal Government," *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991). This structure means that the federal government "may not conscript state governments as its agents," *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 472 (2018) (citation omitted), including by "dictat[ing] what a state legislature may and may not do," *id.* And although Congress may regulate the States as employers, it cannot do so in a way "that is destructive of state sovereignty." *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 554 (1985). EEOC's Final Rule strongarms States to implement a federal preference for abortions that are illegal under state law. Not only does the Rule intrude on state sovereignty, it does so in the area of "public health and safety," which are "field[s] traditionally occupied by the States." *R.J. Reynolds Tobacco Co. v. City of Edina*, 60 F. 4th 1170, 1176-77 (8th Cir. 2023); *see also Dobbs*, 597 U.S. at 301. The PWFA lacks the requisite clear intention of Congress to vitiate state-level policy choices by requiring States to accommodate illegal abortion procedures.

*Second*, the Final Rule exceeds the federal government's power under Section 5 of the Fourteenth Amendment.  Congress's Section 5 authority to abrogate sovereign immunity "extends *only* to 'enforc[ing]' the provisions of the Fourteenth Amendment."  *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997) (emphasis added).  But "the Fourteenth Amendment does not protect the right to an abortion" as a protected class or characteristic, nor is declining to affirmatively accommodate abortion irrational or reflective of States' "history of purposeful unequal treatment" given the States' many legitimate interests in limiting the procedure.  *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 82-83 (2000); *Dobbs*, 597 U.S. at 240, 301 & n.22.  Indeed, DOJ warned lawmakers that the PWFA's abrogation of state sovereign immunity presented "significant litigation risk" because pregnancy discrimination is not sex discrimination *per se*.  *See* DOJ Section 5 Letter, at 1-2; *accord Geduldig v. Aiello*, 417 U.S. 484, 494 (1974) (disagreeing that "exclusion of [pregnancy-related] disability from coverage amounts to invidious discrimination").  *A fortiori*, EEOC may not abrogate States' sovereign immunity for failure to accommodate elective abortions, which neither the Fourteenth Amendment nor any other provision of the Constitution protects.

*Third*, EEOC's Final Rule contradicts the First Amendment by requiring employers to speak in ways that advance procedures that state law prohibits.  The Final Rule's anti-interference provisions risk preventing public

26

and private employers from promoting or encouraging a worker to seek out pro-life resources and instead requires that employers communicate in ways that help facilitate abortion. *See 303 Creative LLC v. Elenis*, 600 U.S. 570, 596 (2023) ("No government . . . may affect a speaker's message by forcing her to accommodate other views." (cleaned up)); *see also Nat'l Inst. Of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018) (*NIFLA*). By preventing States from referring employees to policies and resources with a view to dissuade them from seeking abortion accommodations and subjecting States to potential liability for similar speech by their employees, the Final Rule intrudes on States' ability to express their own messages in opposition to abortion. *See* 89 Fed. Reg. 29,218 (Example #76); *cf. Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 216 (2015) ("With respect to specialty license plate designs, Texas is not simply managing government property, but instead is engaging in expressive conduct.").

So too, the abortion-accommodation mandate would require employers and co-employees to devote resources and act to assist women's provision of abortions, contrary to core religious liberty rights. *See* Compl. ¶¶ 123. EEOC's response—that it will assess any religious-liberty implications later, on a case-by-case basis—ignores the front-end First Amendment problems its abortion-accommodation mandate uniquely generates. And the little EEOC says about employers and employees' religious liberty makes matters worse.

27

EEOC claims the Final Rule does not trigger any Free-Exercise-Clause scrutiny because it is generally applicable, 89 Fed. Reg. 29,151, yet acknowledges that the scheme does not apply to all employers. *Cf. Fulton v. City of Philadelphia*, 593 U.S. 522, 526 (2021) ("A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way."). EEOC next suggests the Final Rule is narrowly tailored to advance its compelling interest in eradicating discrimination, 89 Fed. Reg. 29,151 & n. 284, without disputing that *Dobbs* recognized the States' right to regulate abortions and held such laws are generally not discriminatory. *See Dobbs*, 597 U.S. at 236.

### C.   The Final Rule is Arbitrary and Capricious.

A reviewing court must set aside agency action that is "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A). An agency action is arbitrary and capricious when it "entirely fails to consider an important aspect of the problem or offer an explanation for its decision that runs counter to the evidence before it." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 682 (2020) (cleaned up). EEOC's Final Rule is arbitrary and capricious for at least three reasons.

*First*, EEOC failed to even acknowledge the federalism concerns associated with forcing States to accommodate abortions that are illegal under state law, and instead asserts that the Rule has no federalism implications. 89 Fed.

Reg. 29,182.  Yet EEOC's own analysis identifies "potential interaction or conflict between PWFA and State laws" that "will be addressed on a case-by-case basis."  89 Fed. Reg. 29,112.  Such state laws, as the Supreme Court recently held in *Dobbs*, reflect States' constitutional prerogative to "regulat[e] or prohibit[] abortion."  597 U.S. at 302.  In forcing States to facilitate abortions illegal under State law, the Final Rule thus "invades the province of state sovereignty," *New York v. United States*, 505 U.S. 144, 155 (1992), and "strikes at the heart" of the States' "reserved power" over abortion regulation.  *West Virginia v. EPA*, 669 F. Supp. 3d. 781, 805 (D.N.D. 2023).  EEOC's silence in the face of these concerns was arbitrary and capricious.

*Second*, EEOC failed to assess the effect of First Amendment precedent on the Final Rule's sweeping anti-interference provisions.  Contrary to the statutory text, which purports to prohibit *conduct* like "retaliation," and "coerc[ion], intimidat[ion], threat[s], and interfere[nce],"[11] those provisions purport to prohibit *speech*, noting that even "general statements" may violate the Rule "depend[ing] on the language of the statement."  89 Fed. Reg. 29,148; *see also id.* at 29, 218 (indicating that "unwelcome, critical comments" may constitute "retaliatory harassment").   As such, the Final Rule's anti-

---

[11] *Cf. United States v. Gaye*, 902 F.3d 780, 787 (8th Cir. 2018) ("Obstructive conduct includes, among other things, 'threatening, intimidating, or otherwise unlawfully influencing a ... witness ... directly or indirectly, or attempting to do so.'"); *Hood v. Midwest Sav. Bank*, 95 F. Appx. 768, 779 (6th Cir. 2004) (similar).

interference provisions chill employers or co-workers from promoting or en-
couraging a pregnant employee to avoid abortion and seek out pro-life re-
sources—on the theory that this may dissuade a reasonable person from seek-
ing an abortion accommodation; instead, all involved must relay pro-abortion
messages to avoid EEOC inquiry.  *See* 89 Fed. Reg. at 29,216.  But "[n]o gov-
ernment . . . may affect a speaker's message by forcing her to accommodate
other views." *303 Creative*, 600 U.S. at 596 (cleaned up).

The Final Rule does not resolve these First Amendment issues.  Rather,
EEOC simply disclaims that the anti-interference provisions would prohibit
"general statements regarding an employer's mission or religious beliefs" such
as would be found in "mission statements" or "employee handbooks."  89 Fed.
Reg. 29,148.  In other words, the Rule merely disclaims "general statements"
that are not directed toward anyone in particular.  And even then, an employer
might be liable for such statements "depend[ing] on the language of the state-
ment." *Id*.  So too, the Final Rule risks creating "retaliatory harassment" lia-
bility if the employer does not sufficiently police the pro-life speech of a preg-
nant employee's coworkers. *Id*. at 29,218 (Example #76).  The Final Rule thus
puts employers "to the choice of curtailing [their] mission or approving [of
actions] inconsistent with [their] beliefs." *Fulton*, 593 U.S. at 532.

*Third*, because EEOC performed "such an unreasonable assessment of
social costs and benefits as to be arbitrary and capricious," the Final Rule

"cannot stand." *Northport Health Servs. of Arkansas, LLC v. U.S. Dep't of Health & Hum. Servs.*, 438 F. Supp. 3d 956, 978 (W.D. Ark. 2020) (quoting *Nat'l Telephone Co-op Ass'n v. FCC*, 563 F.3d 535, 540-41 (D.C. Cir. 2009)). EEOC disregarded *any* costs associated with implementing the abortion-accommodation portion of the Final Rule; instead, it merely considered "simple and no-cost [accommodations] like access to water, stools, or more frequent bathroom breaks"—*i.e.*, costs associated with maintaining a healthy pregnancy, not terminating one. 89 Fed. Reg. 29,175.

Compounding this error, EEOC then excluded costs from *any* States with "PWFA-type statutes," *see id.* at 29,158-59; in so doing, EEOC declined to address the substance of Tennessee's comment that many States do not (or could not) require abortion accommodations. EEOC likewise declined to assess ongoing compliance costs and expenses of employers' needing to obtain legal counsel, opting to account only for "one-time" implementation costs. *Id.* at 29,161. But EEOC acknowledged that the Final Rule would present complex factual scenarios which must be "addressed on a case-by-case basis, particularly given the State- and fact- specific nature of these issues." *See, e.g.*, *id.* at 29, 113. The Final Rule therefore significantly and unlawfully undercounts costs of EEOC's expansive abortion-accommodation mandate.

* * *

31

In short, EEOC's Final Rule suffers from statutory, constitutional, and APA defects, any one of which requires vacating the Final Rule as unlawful.

## II.   Plaintiff States Face Irreparable Harm Absent Preliminary Relief.

Plaintiff States regularly employ pregnant workers, including many thousands of female employees.[12]   *See* Ex. A, Raymer Decl.; Ex. B. Parsons Decl.; *see also generally* Exs. C-H (State Declarants).   Although the States offer many benefits and accommodations to their pregnant workers, including parental leave and sick leave that may be used for medical reasons, the States do not currently offer leave or accommodations for employees to pursue abortions prohibited by state law.   *See* Ex. A at ¶¶ 6-8; *see also* Exs. B-H. Requiring that States create unprecedented accommodations for women seeking abortions illegal under state law would irreparably harm Plaintiff States.

*First*, EEOC's Final Rule will imminently force the Plaintiff States to incur various costs that they could not later recover.   States will incur human resources and other compliance costs related to managing these accommodations, informing employees about available benefits, and updating employee materials to reflect the accommodation for elective abortions.   *See* Raymer Decl. ¶¶ 9-10; *see also* Exs. B-H. They also would shoulder costs associated with lost productivity, shift covering, and provision of additional paid and

---

[12]   Tennessee 2023 State of the State Employee Annual Report, https://perma.cc/53EZ-EPR5 (indicating that 21,591 women work in the state Executive Branch); Decl. of Craig Raymer, Ex. A ("Raymer Decl.").

unpaid leave days, among others, to accommodate employees' abortions. *See id.* Nor could these costs be rectified with money damages, given EEOC's sovereign immunity. Such "unrecoverable economic loss" constitutes "irreparable harm." *Iowa Utilities Bd. v. F.C.C.*, 109 F.3d 418, 427 (8th Cir. 1996); *accord Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023).

*Second*, EEOC's abortion-accommodation mandate fundamentally infringes on Plaintiff States' sovereignty by hampering their duly enacted laws regulating abortion. *See, e.g.*, Compl. ¶¶ 14-35.[13] Post *Dobbs*, States can and do limit abortions to further their legitimate interests in respecting and preserving prenatal life, protecting the integrity of the medical profession, and guarding against certain types of abortion procedures, among other aims. *Dobbs*, 597 U.S. at 301. By compelling Plaintiff States to facilitate their own employees' elective abortions, the Final Rule invades State sovereignty by forcing Plaintiffs to violate their policies of regulating abortion in furtherance of their legitimate interests. *See Kentucky v. Biden*, 23 F.4th 585, 611 n.19 (6th Cir. 2022) ("[I]nvasions of state sovereignty . . . likely cannot be economically quantified, and thus cannot be monetarily redressed."); *West Virginia*, 669 F. Supp. 3d at 807 (collecting cases holding that the loss of state sovereignty constitutes irreparable harm).

---

[13] Citing, e.g., Tenn. Code Ann. § 39-15-213, -214; *id.* at § 9-4-5116; Ark. Const. amend. LXVIII, §§ 2-3; Ark. Code Ann. § 5-61-304, -404.

*Third*, requiring Plaintiff States to adopt policies promoting the availability of elective abortions unconstitutionally impairs each State's interest in protecting its messaging with respect to the damages caused by abortion. Many Plaintiff States have pro-life policies that cut across state statutes and activities. *See* Compl. ¶¶ 14-35. The Final Rule plainly "alters the content" of States' pro-life expression "[b]y requiring petitioners to inform women how they can obtain state-subsidized abortions—at the same time [they] try to dissuade women from choosing that option." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (*NIFLA*). The Final Rule forces Plaintiffs to send mixed messages contrary to the policies of the States—elective abortion is prohibited, but we will help women to secure one.

## III. The Balance of the Equities and Public Interest Factors Weighs in Plaintiff States' Favor.

For the reasons given, Plaintiff States have a strong likelihood of success on the merits and face immense and impending irreparable harm. In contrast, entering preliminary relief would not harm EEOC or the public interest.

The Final Rule would force Plaintiffs to accommodate abortions that are both contrary to state law (*see supra* n. 13) and the PWFA itself. But the PWFA was intended to promote healthy pregnancies, not end them. *Supra* I.A. Thus, EEOC's authority to effectuate the PWFA gives it "no interest in enforcing" an unlawful abortion-accommodation mandate. *Dakotans for Health v. Noem*, 52 F.4th 381, 392 (8th Cir. 2022). Nor can EEOC credibly

claim a countervailing public interest in abortion access, given that Plaintiff States' citizens chose protecting unborn life over elective abortions.

Moreover, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)).  Thus, if neither Congress nor the Constitution confers on EEOC "the power to regulate" in the challenged manner, it is not courts' role to "weigh such tradeoffs" of EEOC's pursuit of its self-described "desirable ends." *Nat'l Fed'n of Indep. Bus. v. OSHA*, 142 S. Ct. 661, 666 (2022) (per curiam); *Ala. Ass'n of Realtors*, 141 S. Ct. at 2490.  By contrast, "there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *League of Women Voters*, 838 F.3d at 12.  Thus, "the public's true interest lies in a correct application" of the PWFA.  *Kentucky*, 23 F.4th at 612; *accord First Premier Bank v. U.S. Consumer Fin. Prot. Bureau*, 819 F. Supp. 2d 906, 922 (D.N.D. 2011).

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff States' motion for a stay under 5 U.S.C. § 705 and a preliminary injunction.

JONATHAN SKRMETTI
  Tennessee Attorney General
  and Reporter

/s/ *Whitney Hermandorfer*
WHITNEY D. HERMANDORFER*
  Director of Strategic Litigation
REED N. SMITH*
  Assistant Attorney General
VIRGINIA N. ADAMSON*
  Strategic Litigation Counsel &
  Assistant Solicitor General
JOSHUA D. MINCHIN*
  Honors Fellow, Office of the
  Solicitor General

OFFICE OF THE TENNESSEE
  ATTORNEY GENERAL
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-8726
Whitney.Hermandorfer@ag.tn.gov

*Motion for admission *Pro Hac Vice* under Local Rule 83.5(d) forth-coming

*Counsel for Plaintiff State of Tennessee*

TIM GRIFFIN
  Arkansas Attorney General

/s/ *Nicholas J. Bronni*
NICHOLAS J. BRONNI (2016097)
  Solicitor General
DYLAN L. JACOBS (2016167)
  Deputy Solicitor General
ASHER STEINBERG (2019058)
  Senior Assistant Solicitor General

OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-6302
Nicholas.Bronni@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

STEVE MARSHALL
  Attorney General

/s/ *Edmund G. LaCour, Jr.*
EDMUND G. LACOUR, JR.*
Solicitor General
OFFICE OF THE ALABAMA
ATTORNEY GENERAL
501 Washington Avenue
P.O. Box 300152
Montgomery, AL 36130
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@
  AlabamaAG.gov

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcom-
ing

*Counsel for Plaintiff State of Ala-
bama*

ASHLEY MOODY
  Attorney General

/s/ *Natalie Christmas*
NATALIE CHRISTMAS*
Senior Counselor
OFFICE OF THE FLORIDA ATTORNEY
GENERAL
PL-01, The Capitol
Tallahassee, FL 32399
Tel.: (850) 414-3300
Natalie.christmas@myfloridale-
gal.com

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcom-
ing

*Counsel for Plaintiff State of Florida*

37

CHRISTOPHER CARR
  Attorney General

/s/ *Stephen Petrany*
STEPHEN PETRANY*
Solicitor General
OFFICE OF THE ATTORNEY GENERAL
OF GEORGIA
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Motion for admission *Pro Hac Vice* under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of Georgia*

RAÚL R. LABRADOR
  Attorney General

/s/ *Joshua N. Turner*
JOSHUA N. TURNER*
Chief of Constitutional Litigation
and Policy
ALAN M. HURST*
Solicitor General
OFFICE OF THE IDAHO ATTORNEY
GENERAL
P.O. Box 83720
Boise, Idaho 83720
Tel: (208) 334-2400
josh.turner@ag.idaho.gov

*Motion for admission *Pro Hac Vice* under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of Idaho*

THEODORE E. ROKITA
  Attorney General

/s/ *James A. Barta*
JAMES A. BARTA*
Solicitor General
OFFICE OF THE ATTORNEY GEN-
ERAL OF INDIANA
IGC South, Fifth Floor
302 W. Washington St.
Indianapolis, Indiana 46204
Telephone: (317) 232-0709
James.Barta@atg.in.gov

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcom-
ing

*Counsel for Plaintiff State of Indiana*

BRENNA BIRD
  Attorney General

/s/ *Eric H. Wessan*
ERIC H. WESSAN*
Solicitor General
OFFICE OF THE IOWA ATTORNEY
GENERAL
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
Eric.Wessan@ag.iowa.gov

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcom-
ing

*Counsel for Plaintiff State of Iowa*

KRIS W. KOBACH
  Attorney General

/s/ *Erin Gaide*
ERIN GAIDE*
Assistant Attorney General
OFFICE OF THE KANSAS ATTORNEY
GENERAL
120 SW 10th Ave.
Topeka, KS 66612
(785) 296-7109
erin.gaide@ag.ks.gov

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of Kansas*

ANDREW BAILEY
  Attorney General

/s/ *Joshua M. Divine*
JOSHUA M. DIVINE*
Solicitor General
MISSOURI ATTORNEY GENERAL'S
OFFICE
Post Office Box 899
Jefferson City, MO 65102
Tel. (573) 751-1800
Fax. (573) 751-0774
josh.divine@ago.mo.gov

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of Missouri*

MICHAEL T. HILGERS
  Attorney General

/s/ *Lincoln J. Korell*
LINCOLN J. KORELL*
Assistant Solicitor General
OFFICE OF THE ATTORNEY GENERAL OF
NEBRASKA
2115 State Capitol
Lincoln, Nebraska 68509
(402) 471-2682
lincoln.korell@nebraska.gov

*Motion for admission *Pro Hac Vice* under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of Nebraska*

DREW WRIGLEY
  Attorney General

/s/ *Philip Axt*
PHILIP AXT*
Solicitor General
OFFICE OF NORTH DAKOTA ATTORNEY GENERAL
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
Telephone: (701) 328-2210
pjaxt@nd.gov

*Motion for admission *Pro Hac Vice* under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of North Dakota*

41

GENTNER DRUMMOND
  Attorney General

/s/ *Garry M. Gaskins, II*
GARRY M. GASKINS, II*
Solicitor General
OKLAHOMA OFFICE OF THE ATTOR-
NEY GENERAL
313 NE 21st Street,
Oklahoma City, OK 73105
405-312-2451
Garry.Gaskins@oag.ok.gov

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcom-
ing

*Counsel for Plaintiff State of Okla-
homa*

ALAN WILSON
  Attorney General

/s/ *Joseph D. Spate*
JOSEPH D. SPATE*
Assistant Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL
STATE OF SOUTH CAROLINA
1000 Assembly Street
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcom-
ing

*Counsel for Plaintiff State of South
Carolina*

42

MARTY J. JACKLEY
  Attorney General

/s/ *Grant M. Flynn*
GRANT M. FLYNN*
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
STATE OF SOUTH DAKOTA
1302 E. Hwy. 14, Suite #1
Pierre, SD  57501
(605) 773-3215
grant.flynn@state.sd.us

*Motion for admission *Pro Hac Vice* under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of South Dakota*

SEAN REYES
  Attorney General

/s/ *Lance F. Sorenson*
LANCE F. SORENSON*
Assistant Utah Attorney General
UTAH ATTORNEY GENERAL
160 East 300 South, 6th floor
PO Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0100
lancesorenson@agutah.gov

*Motion for admission *Pro Hac Vice* under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of Utah*

PATRICK MORRISEY
  Attorney General

/s/ *Curtis R. A. Capehart*
CURTIS R. A. CAPEHART*
Deputy Attorney General
OFFICE OF THE WEST VIRGINIA AT-
TORNEY GENERAL
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305
Telephone: (304) 558-2021
Fax: (304) 558-0140
curtis.r.a.capehart@wvago.gov

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcom-
ing

*Counsel for Plaintiff State of West Virginia*

44