# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

STATES OF TENNESSEE,
ARKANSAS, ALABAMA,
FLORIDA, GEORGIA, IDAHO,
INDIANA, IOWA, KANSAS,
MISSOURI, NEBRASKA, NORTH
DAKOTA, OKLAHOMA, SOUTH
CAROLINA, SOUTH DAKOTA,
UTAH, and WEST VIRGINIA,

     *Plaintiffs*,

    v.

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

    *Defendant*.

Case No. 2:24-cv-84-DPM

## BRIEF OF *AMICI CURIAE* SMALL BUSINESS MAJORITY, MAIN STREET ALLIANCE, AND AMERICAN SUSTAINABLE BUSINESS COUNCIL IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# FEDERAL RULE OF CIVIL PROCEDURE 7.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, the undersigned counsel for Small Business Majority, Main Street Alliance, and American Sustainable Business Council certify that:

1. Small Business Majority, Main Street Alliance, and American Sustainable Business Council have no parent corporation, and

2. No corporation owns any stock in Small Business Majority, Main Street Alliance, and American Sustainable Business Council.


*/s/ Bettina Brownstein*
Bettina Brownstein

# TABLE OF CONTENTS

FEDERAL RULE OF CIVIL PROCEDURE 7.1 DISCLOSURE
STATEMENT ................................................................................... i

TABLE OF AUTHORITIES ........................................................... iii

STATEMENT OF INTEREST OF *AMICI CURIAE* ...................................... 1

INTRODUCTION ........................................................................... 2

ARGUMENT .................................................................................. 3

    I.    The EEOC's Rule Provides Vital Guidance to Employers. ......... 3

    II.   The EEOC's Rule is Good for Business and the Economy.......... 9

CONCLUSION .............................................................................. 13

# TABLE OF AUTHORITIES

**Statutes**                                                          **Page(s)**

42 U.S.C. § 2000gg ........................................................................... 4

42 U.S.C. § 2000gg-1 ...................................................................... 4

**Rules and Regulations**

Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg 29,096-
    01 (April 19, 2024) .......................................................... 5, 7, 8

**Other Authorities**

Dina Bakst, et al., *Long Overdue: It Is Time for the Federal Pregnant Workers
    Fairness Act*, A Better Balance 22 (2019),
    https://www.abetterbalance.org/wp-content/uploads/2019/05/Long-
    Overdue.pdf ............................................................................ 12

Lena Burleson et al., *Pregnancy and Parental Status Discrimination: A Review
    of Career Impacts and Mitigation Strategies*, Insight Pol'y Rsch. Inc.
    (2022),
    https://dacowits.defense.gov/Portals/48/Documents/Reports/2022/Insig
    ht%20RFI%2016_Lit%20Review_Pregnancy%20and%20Parental%20
    Status%20Discrimination.pdf?ver=YSqHzfeHAHkwxDRwvVo3Cw%
    3D%3D ................................................................................... 10

Giulia Carbonaro, *America's Labor Shortage is Most Severe in These 13
    States*, Newsweek (Aug. 10, 2023, 7:03 AM),
    https://www.newsweek.com/america-labor-shortage-most-severe-13-
    states-1818545 ........................................................................ 11

*Costs and Benefits of Accommodation*, Job Accommodation Network (2024),
    https://askjan.org/topics/costs.cfm ............................................ 13

*Fact sheet: The State of Women in the Labor Market in 2023*, Ctr. for Am.
    Progress (Feb. 6, 2023), https://www.americanprogress.org/article/fact-
    sheet-the-state-of-women-in-the-labor-market-in-2023/ ................ 9

Ben Gitis, Emerson Sprick, Adrienne Schweer, *Morning Consult: 1 in 5 Moms Experience Pregnancy Discrimination in the Workplace*, Bipartisan Pol'y Ctr. (Feb. 11, 2022), https://bipartisanpolicy.org/blog/bpc-morning-consult-pregnancy-discrimination/ ..................................................................................... 10

H.R. Rep. No. 117-27 (2021), https://www.congress.gov/117/crpt/hrpt27/CRPT-117hrpt27.pdf ......... 6

*Labor force participation rate for women highest in the District of Columbia in 2022*, U.S. Bureau of Lab. Stat. (2023), https://www.bls.gov/opub/ted/2023/labor-force-participation-rate-for-women-highest-in-the-district-of-columbia-in-2022.htm ...................... 9

Letter from Neil L. Bradley, Exec. Vice Pres. & Chief Pol'y Officer, U.S. Chamber of Com., to Members of the U.S. Senate (July 21, 2021), https://www.uschamber.com/assets/documents/210721_s._1486_pregn antworkersfairnessact_senate.pdf ........................................................... 9

*Long Over Due: Exploring the Pregnant Workers Fairness Act (H.R. 2694): Hearing Before the Subcomm. on Civ. Rts. & Hum. Servs. of the H. Comm. on Educ. & Lab.*, 116th Cong. (2019), https://www.govinfo.gov/content/pkg/CHRG-116hhrg39487/pdf/CHRG-116hhrg39487.pdf ............................ 6, 8, 11

Jessica Mason & Katherine Gallagher Robbins, *Discrimination While Pregnant*, Nat'l P'ship for Women & Fams. (2022), https://nationalpartnership.org/report/discrimination-while-pregnant . 10

Carly McCann & Donald Tomaskovic-Devey, *Pregnancy Discrimination at Work: An Analysis of Pregnancy Discrimination Charges Filed with the U.S. Equal Employment Opportunity Commission*, Ctr. for Emp. Equity, Univ. of Mass. Amherst (2021), https://www.umass.edu/employmentequity/sites/default/files/Pregnancy%20Discrimination%20at%20Work.pdf .............................................. 10

Shane McFeely & Ben Wigert, *This Fixable Problem Costs U.S. Businesses $1 Trillion*, Gallup.com (Mar. 13, 2019),

iv

https://www.gallup.com/workplace/247391/fixable-problem-costs-businesses-trillion.aspx ........................................................................ 11

*Opinion Poll: Women entrepreneurs see access to reproductive health as essential to their economic security*, SBA (2023), https://smallbusinessmajority.org/sites/default/files/research-reports/2023-women-small-business-reproductive-health-report.pdf.. 12

Colleen Payton, et al., Evaluation of workplace lactation support among employers in two Pennsylvania cities, 62 Bus. Horizons 579 (2019) https://www.sciencedirect.com/science/article/pii/S0007681318301800 #sec0115 ....................................................................................................

*Small-Business Labor Crisis Report 2023*, Ramsey Sols. (2023), https://cdn.ramseysolutions.net/media/b2b/entre/article/the-small-business-labor-crisis/2023-small-business-labor-crisis-report-final.pdf ............................................................................................................. 11

Margaret D. Whitley, et al., *Workplace breastfeeding support and job satisfaction among working mothers in the United States*, 62 Am. J. of Indus. Med. 716 (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8423352/pdf/nihms-1735888.pdf ........................................................................................ 13

## STATEMENT OF INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* represent businesses across the nation that will be regulated by the Final Rule and recognize the importance of providing clear guidance to employers, particularly small businesses. *Amici* include:

Small Business Majority ("SBM") is a national small business organization that empowers America's diverse entrepreneurs to build a thriving and equitable economy. SBM engages a network of more than 85,000 small businesses and 1,500 business and community organizations to deliver resources to entrepreneurs and advocate for public policy solutions that promote inclusive small business growth. SBM's work is bolstered by extensive research and deep connections with the small business community.

*Amicus curiae* Main Street Alliance ("MSA") is a national network of small businesses, which represents approximately 30,000 small businesses across the United States. MSA helps small business owners realize their full potential as leaders for a just future that prioritizes good jobs, equity, and community through organizing, research, and policy advocacy on behalf of

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), the undersigned counsel further represent that no party or party's counsel authored this brief in whole or in part; that no party or party's counsel contributed money that was intended to fund preparation or submission of this brief; and that no person other than the amici and counsel identified herein contributed money that was intended to fund preparation or submission of this brief.

small businesses. MSA also seeks to amplify the voices of its small business membership by sharing their experiences with the aim of creating an economy where all small business owners have an equal opportunity to succeed.

*Amicus curiae* the American Sustainable Business Council ("ASBC") is a multi-issue membership organization comprised of the business and investor community, which collectively represents over 200,000 businesses, the majority of which are small and mid sized businesses. ASBC advocates for solutions and policies that support a just, sustainable stakeholder economy. Its mission is to educate, connect, and mobilize business leaders and investors to transform the public and private sectors and the overall economy.

## INTRODUCTION

The Pregnant Workers Fairness Act ("PWFA") is a landmark, bipartisan law that creates a national standard for how employers handle workplace accommodation requests from pregnant employees. To ensure that employers and employees understand their new obligations, Congress directed Defendant Equal Employment Opportunity Commission ("EEOC") to promulgate regulations. The EEOC did so, issuing a Final Rule that provides important guidance for employers on how to comply with the PWFA. *Amici* and their members better understand their obligations to their employees following the

2

issuance of the Final Rule.

Employers benefit from the PWFA and the Final Rule. Accommodating employees with qualifying conditions will allow them to stay on the job longer, reducing costly employee turnover and avoidable absenteeism.

The preliminary relief sought by Plaintiffs threatens to upend this system and undermine the effectiveness of the PWFA. Plaintiffs seek to delay enforcement of the entire Final Rule for all employers nationwide because they object to including abortion as a "related medical condition." Delaying enforcement of the Rule will sow chaos and confusion, harming *amici's* members and their employees. The alternative relief sought by Plaintiffs is no less harmful. It will undermine the clarity and protections promised by the PWFA for employees in the Plaintiffs' States. The Court should deny Plaintiffs' motion for preliminary injunctive relief.

## ARGUMENT

### I. The EEOC's Rule Provides Vital Guidance to Employers.

The Final Rule provides important guidance to employers about how to comply with the PWFA, which has been in effect since last year. For example, the Rule explains what conditions are covered by the Act, addresses the types of accommodations that may be "reasonable," including predictable

assessments, and lays out a process to ensure that employers and employees can quickly collaborate to address employees' health needs.  The guidance set forth by EEOC is particularly important to *amici*'s members, many of whom are small businesses that often lack the resources to retain counsel to ensure compliance with employment laws.

The PWFA requires that employers with fifteen or more employees provide "reasonable accommodations" for "known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee," unless the employer can demonstrate "the accommodation would impose an undue hardship" on the employer's business. 42 U.S.C. § 2000gg-1(1).  The Act defines "known limitation" as any "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions." *Id.* § 2000gg(4).  The Rule, in turn, provides necessary guidance on "related medical conditions," offering a "non-exhaustive" list of conditions covered, including, among other things, termination of pregnancy, including via miscarriage, stillbirth, or abortion; ectopic pregnancy; preterm labor; pelvic prolapse; nerve injuries; cesarean or perineal wound infection; gestational diabetes; preeclampsia; HELLP (hemolysis, elevated liver enzymes and low platelets) syndrome; hyperemesis gravidarum; endometriosis; sciatica; lumbar

4

lordosis; nausea or vomiting; edema of the legs, ankles, feet, or fingers; high blood pressure; infection; antenatal (during pregnancy) anxiety, depression, or psychosis; postpartum depression, anxiety, or psychosis; frequent urination; incontinence; and lactation and conditions related to lactation. Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg 29,096-01, 29,183 (April 19, 2024). The Rule's preamble explains that the Rule does not "requires blanket accommodation for every condition listed nor precludes accommodations for conditions that are not listed." *Id.* at 29,101. Instead, the Rule provides a blueprint to help employers determine if the employee's medical condition relates to "current pregnancy; past pregnancy; potential or intended pregnancy . . . ; labor; and childbirth[.]" *Id.* at 29,183.

Plaintiffs' suit chiefly hinges on whether "termination of pregnancy" by means of abortion should be included in this list as a "related medical condition." *Amici* defer to other briefs to explain why that conclusion is dictated by the PWFA. Def.'s Mem. In Opp'n to Pls.' Mot. For a § 705 Stay and Prelim. Inj. 21-33, ECF No. 34. Importantly, from *amici*'s perspective, excluding abortion from the Rule will confuse employers and employees on the scope of the PWFA. Congress intended for the PWFA to fill the gaps left

5

by existing laws, such as the Pregnancy Discrimination Act ("PDA").[2] *Amici*'s members and other employers have long understood that they cannot take adverse employment action against employees who have had an abortion under the PDA. It makes little sense that an employer could deny an employee time off to have an abortion or recover from an abortion but could not terminate the same employee for receiving that care. Interpreting two coextensive statutes differently risks confusing employers on the contours of their obligations and needlessly exposes them to liability.

The Final Rule also provides comprehensive examples of "reasonable accommodations" that employers may offer. Potential accommodations include modifying work schedules, modifying uniforms, permitting use of paid leave or providing unpaid leave, allowing for telework, providing a reserved parking space, temporarily suspending "essential functions" of the job, and allowing for breaks and a private place for lactation in reasonable proximity to the employee's usual work area. Implementation of the Pregnant Worker

---

[2] *Long Over Due: Exploring the Pregnant Workers Fairness Act (H.R. 2694): Hearing Before the Subcomm. on Civ. Rts. & Hum. Servs. of the H. Comm. on Educ. & Lab.*, 116th Cong. 3 (2019) (statement of Rep. Suzanne Bonamici), https://www.govinfo.gov/content/pkg/CHRG-116hhrg39487/pdf/CHRG-116hhrg39487.pdf. *See also* H.R. Rep. No. 117-27, pt. 1, at 17 (2021), https://www.congress.gov/117/crpt/hrpt27/CRPT-117hrpt27.pdf ("To remedy the shortcomings of the PDA, Congress must step in and act.").

6

Fairness Act, 89 Fed. Reg. 29,184-85.  Even more explicitly, the Final Rule offers four "predictable assessments"—simple accommodations that when requested by a pregnant employee will "in virtually all cases," be found to be "reasonable accommodations."  *Id.* at 29,185-86.  The "predictable assessments" are allowing the employee to, as needed, carry or keep water near; take additional restroom breaks; take breaks to eat and drink; and allowing an employee whose work requires standing to sit and whose work requires sitting to stand, as needed.  *Id.* at 29,186.  The examples provided, both as reasonable accommodations and "predictable assessments," helpfully give employers a framework for understanding what types of accommodations to offer their employees, absent undue hardship.

*Amici*'s members also benefit from the Rule's guidance on the "interactive process."  The Rule makes clear that "[t]here are no rigid steps that must be followed" in accommodating an employee.  *Id.* at 29,186.  Instead, the employer and employee must engage in an "informal, interactive process" that identifies the known limitation under the PWFA, the adjustment or change at work that is needed due to the limitation, and potential reasonable accommodations.  *Id.*  The Final Rule explains when an employer may—and may not—require additional documentation, ensuring that employers know

7

what is permitted.  *Id.*  And the Rule incentivizes employers to offer an interim reasonable accommodation while evaluating the employee's request, by explaining doing so is a "best practice" and "may help limit a covered entity's exposure to liability."  *Id.* at 29,123.

Appended to the Rule is an Appendix containing 78 examples applying the Rule to potential scenarios.  *Id.* at 29,189-219.  The guidance provided by the Final Rule and Appendix are particularly important to small businesses, like many of *amici*'s members.  Small businesses often lack the resources to retain counsel for compliance assistance, sometimes lacking even Human Resources personnel to track and shift their practices based on the litigation landscape.[3]  Easy-to-understand guidance that provides precise rules of the road to follow—like the Final Rule—reduces the costs and burden on small businesses and helps employers comply with the legal requirements.  And, for a small business, anything that reduces risk and increases stability and predictability makes opening, survival, and growth more possible.  Even a marginal decrease in costs can be beneficial to a small business, where margins

---

[3] *See Long Over Due: Exploring the Pregnant Workers' Fairness Act (H.R. 2694): Hearing Before the Subcomm. on Civil Rights and Human Services of the H. Comm. on Ed. & Lab.*, 116th Cong. 24 (2019), https://edlabor.house.gov/imo/media/doc/WilburTestimony1022192. pdf (testimony of Iris Wilbur).

are slim and incomes are modest.  Enjoining some—or all—of the Final Rule would upend the certainty it promises.

## II.    The EEOC's Rule is Good for Business and the Economy.

*Amici* also know that the PWFA and the Final Rule make good business sense.  There was widespread support from the business community for the PWFA.[4]  Advancing women's participation in the workforce is critical to spurring economic growth and advancing equality.  Women today make up nearly half the labor force.[5]  But despite gains by women in recent decades, gender gaps in employment and earnings persist.[6]  The PWFA is a critical tool to keep women in the workforce, whether they want to remain pregnant or not. Keeping these workers in the workforce could improve the national economy, as well as help *amici*'s members by increasing worker retention, reducing absenteeism, and improving the health, well-being, and productivity of their

---

[4] *See* Letter from Neil L. Bradley, Exec. Vice Pres. & Chief Pol'y Officer, U.S. Chamber of Com., to Members of the U.S. Senate (July 21, 2021), https://www.uschamber.com/assets/documents/210721_s._1486_pregnantworkersfairnessact_sen ate.pdf (stating that the U.S. Chamber of Commerce "strongly supports" the PWFA and recognizing that "[e]mployers currently face great uncertainty about whether, and how, they are required to accommodate pregnant workers.").

[5] *Labor force participation rate for women highest in the District of Columbia in 2022*, U.S. Bureau of Lab. Stat. (2023), https://www.bls.gov/opub/ted/2023/labor-force-participation-rate-for-women-highest-in-the-district-of-columbia-in-2022.htm.

[6] *Fact sheet: The State of Women in the Labor Market in 2023*, Ctr. for Am. Progress (Feb. 6, 2023), https://www.americanprogress.org/article/fact-sheet-the-state-of-women-in-the-labor-market-in-2023/.

employees.

Nearly 2.8 million workers each year—70 percent of all pregnant women—are employed during the year of their pregnancy.[7] According to one survey, nearly half of pregnant workers required some sort of accommodation to continue working.[8] But prior to the passage of the PWFA and its implementing regulations, employees were often unable to obtain those accommodations or were afraid to request needed accommodations altogether.[9] Pregnancy discrimination—coupled with a lack of paid leave and the enormous costs of child care—drove women out of the workforce. Labor force participation decreased by 30 percentage points within a year of motherhood.[10]

---

[7] Jessica Mason & Katherine Gallagher Robbins, *Discrimination While Pregnant*, Nat'l P'ship for Women & Fams. (2022), https://nationalpartnership.org/report/discrimination-while-pregnant/.

[8] Carly McCann & Donald Tomaskovic-Devey, *Pregnancy Discrimination at Work: An Analysis of Pregnancy Discrimination Charges Filed with the U.S. Equal Employment Opportunity Commission*, Ctr. for Emp. Equity, Univ. of Mass. Amherst 8 (2021), https://www.umass.edu/employmentequity/sites/default/files/Pregnancy%20Discrimination%20a t%20Work.pdf.

[9] Nearly one in four mothers considered leaving their jobs during a pregnancy due to a lack of reasonable accommodations or fear of discrimination from an employer. Ben Gitis, Emerson Sprick, Adrienne Schweer, *Morning Consult: 1 in 5 Moms Experience Pregnancy Discrimination in the Workplace*, Bipartisan Pol'y Ctr. (Feb. 11, 2022), https://bipartisanpolicy.org/blog/bpc-morning-consult-pregnancy-discrimination/. One in five mothers say they have experienced pregnancy discrimination. *Id. See also* McCann & Tomaskovic-Devey, at 8 (estimating that 250,000 women a year are denied pregnancy related accommodations).

[10] Lena Burleson et al., *Pregnancy and Parental Status Discrimination: A Review of Career Impacts and Mitigation Strategies*, Insight Pol'y Rsch. Inc. 8 (2022), https://dacowits.defense.gov/Portals/48/Documents/Reports/2022/Insight%20RFI%2016_Lit%20

Keeping these employees in the workforce will provide enormous economic benefits to businesses. Businesses—particularly small businesses—today are grappling with persistent worker shortages.[11] Incentivizing worker retention is a critical goal for all businesses to combat shortages. And when employers are able to retain their existing employees, it saves employers money on recruiting and training new employees.[12] *Amici* believe that the Final Rule will promote employee retention by improving employee health and wellbeing  Employees who are pregnant or dealing with related medical conditions will be able to stay in the workforce longer, should they so choose, with commonsense accommodations.[13]  Employees will now have more

---

Review_Pregnancy%20and%20Parental%20Status%20Discrimination.pdf?ver=YSqHzfeHAHk
wxDRwvVo3Cw%3D%3D

[11] *Small-Business Labor Crisis Report 2023*, Ramsey Sols. 3 (2023), https://cdn.ramseysolutions.net/media/b2b/entre/article/the-small-business-labor-crisis/2023-small-business-labor-crisis-report-final.pdf (noting that 11.3 million small business owners report struggling to find the employees they need); Giulia Carbonaro, *America's Labor Shortage is Most Severe in These 13 States*, Newsweek (Aug. 10, 2023, 7:03 AM), https://www.newsweek.com/america-labor-shortage-most-severe-13-states-1818545.

[12] Shane McFeely & Ben Wigert, *This Fixable Problem Costs U.S. Businesses $1 Trillion*, Gallup.com (Mar. 13, 2019), https://www.gallup.com/workplace/247391/fixable-problem-costs-businesses-trillion.aspx (noting that "[t]he cost of replacing an individual employee can range from one-half to two times the employee's annual salary").

[13] *See Long Over Due: Exploring the Pregnant Workers' Fairness Act (H.R. 2694): Hearing Before the Subcomm. on Civil Rights and Human Services of the H. Comm. on Ed. & Lab.*, at 68 (testimony of Dina Bakst) ("Keeping pregnant workers attached to the workforce has also been a key reason for business support of state pregnant worker fairness legislation. For example, the Associated Industries of Massachusetts ("AIM"), which represents 3,500 member employers, took a strong statement in support of the Massachusetts Pregnant Workers Fairness Act.").

11

reassurance to seek these kinds of accommodations, knowing that their employer is required to accommodate them without retaliation. Employees who are pregnant and do not want to be will be able to access accommodations they need to access abortions and return to work, without risking their jobs and livelihood.[14] And new parents will have the confidence to return to the workforce, knowing that their employer must provide them with a private place to pump breast milk[15] and accommodations to address any medical conditions that arise or are exacerbated following pregnancy.

Providing accommodations as required by the Rule will also reduce worker absenteeism and increase employee morale and productivity.[16] The accommodations required by the Rule will mean employees will not be forced

---

[14] This is all the more important since the Supreme Court's decision in *Dobbs*, which has made it even more difficult for employees in states with abortion bans to access reproductive health care. Access to reproductive health care is critical to furthering gender equality and economic growth. Research from *amicus curiae* Small Business Majority confirms the importance of that access to their members. Their research shows that access to reproductive health care, including abortion care, is critical to the ability of women entrepreneurs to start and grow their business while also contributing to their business' success and financial security. *Opinion Poll: Women entrepreneurs see access to reproductive health as essential to their economic security*, SBA (2023), https://smallbusinessmajority.org/sites/default/files/research-reports/2023-women-small-business-reproductive-health-report.pdf.

[15] Employees are also entitled to nursing accommodations under the Providing Urgent Maternal Protections for Nursing Mothers Act (PUMP Act). The PWFA expands those protections beyond just a year, and to employees not covered by the PUMP Act. N.102.

[16] *See* Dina Bakst, et al., *Long Overdue: It Is Time for the Federal Pregnant Workers Fairness Act*, A Better Balance 22 (2019), https://www.abetterbalance.org/wp-content/uploads/2019/05/Long-Overdue.pdf.

to call in sick or otherwise miss work. Regular absenteeism can create operational headaches for employers who otherwise must scramble to find coverage for a shift. And research suggests that employee accommodations, including pregnancy and breastfeeding accommodations, improve worker satisfaction and can increase productivity.[17] According to one survey, over half of employers who offered a workplace accommodation saw an increase in the employee's productivity, and 20 percent of employers saw an increase in overall company productivity.[18]

## CONCLUSION

The Pregnant Workers Fairness Act and the Final Rule will provide a secure working environment for pregnant workers and new parents by encouraging them to remain in or reenter the workforce. Enjoining or delaying the Final Rule in whole or in part— even temporarily—risks upending this carefully-calibrated system. Employers and employees alike will be less

---

[17] *Costs and Benefits of Accommodation*, Job Accommodation Network (2024), https://askjan.org/topics/costs.cfm (finding that offering employees accommodations resulted in increased employee retention, increased employee productivity, and increased employee attendance); Colleen Payton, et al., Evaluation of workplace lactation support among employers in two Pennsylvania cities, 62 Bus. Horizons 579, 580 (2019) https://www.sciencedirect.com/science/article/pii/S0007681318301800#sec0115; cf. Margaret D. Whitley, et al., *Workplace breastfeeding support and job satisfaction among working mothers in the United States*, 62 Am. J. of Indus. Med. 716 (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8423352/pdf/nihms-1735888.pdf (finding work-related problems with breastfeeding are associated with low job satisfaction).

[18] *Costs and Benefits of Accommodation*, Job Accommodation Network, *supra* note 17.

13

confident in the governing rules, leading to confusion that will undermine the

protections of the PWFA.  For the foregoing reasons, the Court should deny

Plaintiffs' Motion for a Preliminary Injunction.

Dated: May 21, 2024                    Respectfully submitted,

                                       */s/ Bettina Brownstein*
                                       Bettina Brownstein (85019)
                                       Bettina E. Brownstein Law Firm
                                       904 West 2nd Street, Ste. 2
                                       Little Rock, AR 72201
                                       Phone: (501) 920-1764
                                       Email:bettinabrownstein@gmail.com

                                       Kaitlyn Golden*
                                       Carrie Y. Flaxman*
                                       DEMOCRACY FORWARD
                                        FOUNDATION
                                       P.O. Box 34553
                                       Washington, D.C. 20043
                                       Tel: (202) 448-9090
                                       kgolden@democracyforward.org
                                       cflaxman@democracyforward.org

                                       *Motion for admission *Pro Hac Vice*
                                          forthcoming

                                       *Counsel for* Amici Curiae

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the type-volume limitations in Fed. R. App. P. 29(a)(5) and 32(a)(7) because it contains 2,974 words, excluding those parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief was produced in a proportionally spaced typeface using Microsoft Word in Times New Roman 15-point font.

*/s/ Bettina Brownstein*
Bettina Brownstein

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2024, a copy of the foregoing was served upon all counsel of record via electronic mail.

*/s/ Bettina Brownstein*
Bettina Brownstein