# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### DELTA DIVISION

STATES OF TENNESSEE, ARKANSAS, ALABAMA, FLORIDA, GEORGIA, IDAHO, INDIANA, IOWA, KANSAS, MISSOURI, NEBRASKA, NORTH DAKOTA, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA, UTAH, and WEST VIRGINIA,

　　　　*Plaintiffs*,

v.

EQUAL EMPLOYMENT OPPOR-TUNITY COMMISSION,

　　　　*Defendant*.

Civil Action No. 2:24-cv-84-DPM
U.S. District Judge D. P. Marshall
U.S. Magistrate Judge Edie R. Ervin

---

## REPLY IN SUPPORT OF PLAINTIFFS'
## MOTION FOR A § 705 STAY AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT......................1

ARGUMENT ...........................................................................2

   I.    The States Have Established Article III Standing. ...................2

      A. The Rule Directly Burdens Plaintiff States.. .........................2

      B. The States Satisfy Redressability and Causation....................4

      C. This Case is Ripe.......................................................5

   II.   The States Are Likely to Succeed on the Merits. .......................6

      A. The Final Rule Exceeds EEOC's Statutory Authority............6

         1.  The Text.......................................................6

         2.  Title VII ......................................................8

         3.  Legislative History........................................10

         4.  Deference ...................................................11

      B. The Final Rule Violates the U.S. Constitution ....................11

         1.  Sovereignty .................................................12

         2.  Section 5......................................................12

         3.  The First Amendment.......................................12

      C. The Final Rule is Arbitrary and Capricious ....................... 13

   III. The Equities Favor the Plaintiff States .........................................14

   IV. All Plaintiff States are Entitled to Relief.....................................14

CONCLUSION ...................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Ala. Ass'n of Realtors v. HHS*,
  594 U.S. 758 (2021) ....................................................................12

*Am. Farm Bur. Fed'n. v. E.P.A.*,
  836 F.3d 963 (8th Cir. 2016) ................................................... 4, 6

*Atl. Richfield Co. v. Christian*,
  140 S. Ct. 1335 (2020) ..................................................................8

*Biden v. Nebraska*,
  143 S. Ct. 2355 (2023) ..................................................................11

*Bloomberg L.P. v. SEC*,
  45 F.4th 462 (D.C. Cir. 2022) ......................................................13

*BP p.l.c. v. Mayor & City Council of Baltimore*,
  141 S. Ct. 1532 (2021) ...................................................................9

*Burlington N. & Sante Fe Ry. Co. v. White*,
  548 U.S. 53 (2006) .........................................................................9

*Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.*,
  98 F.4th 220 (5th Cir. 2024) .................................................. 14, 15

*City of Boerne v. Flores*,
  521 U.S. 507 (1997) .....................................................................12

*Corbett v. Transp. Sec. Admin.*,
  19 F.4th 478 (D.C. Cir. 2021) ........................................................2

*Czyzewski v. Jevic Holding Corp.*,
  580 U.S. 451 (2017) ........................................................................3

*Dakotans for Health v. Noem*,
  52 F.4th 381 (8th Cir. 2022) .........................................................14

*Demarais v. Gurstel Chargo, P.A.,*
  869 F.3d 685 (8th Cir. 2017)...............................................................3

*Digital Recognition Network, Inc. v. Hutchinson,*
  803 F.3d 952 (8th Cir. 2015)...............................................................4

*Dobbs v. Jackson Whole Women's Health,*
  597 U.S. 215 (2022) ................................................................... 11, 12

*Erlenbaugh v. United States,*
  409 U.S. 239 (1972) ..................................................................... 9, 10

*Garcetti v. Ceballos,*
  547 U.S. 410 (2006) ...........................................................................4

*Garcia v. San Antonio Metro. Transit Auth.,*
  469 U.S. 528 (1985) .........................................................................12

*Gen. Dynamics Land Sys., Inc. v. Cline,*
  540 U.S. 581 (2004) ...........................................................................9

*George v. McDonough,*
  596 U.S. 740 (2002) ...........................................................................9

*In re Union Pac. R.R. Emp't Practices Litig.,*
  479 F.3d 936 (8th Cir. 2007)...............................................................6

*Iowa League of Cities v. E.P.A.,*
  711 F.3d 844 (8th Cir. 2013)....................................................... 2, 3, 6

*Jama v. Immigr. & Customs, Enf't,*
  543 U.S. 335 (2005) ...................................................................... 7, 9

*Kiakombua v. Wolf,*
  498 F. Supp. 3d 1 (D.D.C. 2020) ......................................................15

*Labrador v. Poe ex rel. Poe,*
  144 S. Ct. 921 (2024) .......................................................................15

*Lavin v. Husted,*
  689 F.3d 543 (6th Cir. 2012)...............................................................5

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................2

*Minn. Supply Co. v. Raymond Corp.*,
   472 F.3d 524 (8th Cir. 2006)........................................................6

*Nebraska v. Biden*,
   52 F.4th 1044 (8th Cir. 2022)....................................................15

*Nevada v. Dep't of Energy*,
   457 F.3d 78 (D.C. Cir. 2006) ......................................................6

*Pleasant Grove City v. Summum*,
   555 U.S. 460 (2009) ....................................................................13

*Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps. of Eng'rs*,
   531 U.S. 159 (2001) ......................................................................9

*Tennessee v. U.S. Dep't of Agric.*,
   665 F. Supp. 3d 880 (E.D. Tenn. 2023) ....................................3

*Union Pac. R.R. Co. v. U.S. Dep't of Homeland Sec.*,
   738 F.3d 885 (8th Cir. 2013)......................................................11

*Wachovia Bank v. Schmidt*,
   546 U.S. 303 (2006) ....................................................................10

*Wallace v. ConAgra Foods, Inc.*,
   747 F.3d 1025 (8th Cir. 2014)......................................................3

*Whole Women's Health v. Jackson*,
   595 U.S. 30 (2021) ........................................................................4

**Constitutions and Statutes**

Ark. Const. amend. LXVIII, § 2 ............................................. 4, 12

5 U.S.C. § 705 ..................................................................................14

42 U.S.C. § 2000e ............................................................................9

42 U.S.C. § 2000e-5 ........................................................................ 4, 5

42 U.S.C. § 2000gg, *et seq.* ....................................................... *passim*

Tenn. Code Ann. § 6-56-113 ............................................................12

Tenn. Code Ann. § 5-9-115 .............................................................12

Tenn. Code Ann. § 71-5-157 ....................................................... 4, 12

U.S. Const. amend. X ........................................................................3

### Regulations and Guidance

89 Fed. Reg. 29,096 (2024) ................................................. 3, 4, 5, 13

### Other Authorities

Amniocentesis, Mayo Clinic, https://perma.cc/LB9F-5CAC. .........................7

C-section, Mayo Clinic, https://perma.cc/3KD3-9LHL ...............................7

Prenatal care: 1st trimester visits, Mayo Clinic,
   https://perma.cc/5JB8-WXLC .....................................................................8

## INTRODUCTION AND SUMMARY OF ARGUMENT

**I. The States have standing.**  Plaintiff States are directly regulated by the Rule and will suffer documented compliance costs plainly sufficient to confer standing.  Because EEOC promulgated the Rule and has a significant role in enforcing it, the requested relief will redress Plaintiff States' injuries.

**II. The States are likely to succeed on the merits.**  EEOC does not explain how the PWFA's text authorizes the Rule's abortion-accommodation mandate.  Instead, EEOC rests its view on a handful of cases reading Title VII to prohibit abortion-related discrimination.  But this Title VII theory fails because it involves too few cases to show settled meaning, provisions too different from the PWFA, and evidence too overwhelming that Congress did not intend the PWFA to cover abortion.  At a minimum, the major-questions doctrine and the Rule's constitutional problems counsel against EEOC's reading.  EEOC (and its amici's) view that requiring abortion accommodations is good policy is no substitute for showing the PWFA in fact authorizes that novel step.

**III. The balance of equities favors the States.**  The Rule will harm Plaintiffs, whereas EEOC is not injured by a ruling against an illegal mandate.

**IV. All Plaintiff States are entitled to relief.**  The APA expressly allows this Court to delay the Rule's effective date—a provision that operates on the Rule directly.  And because the Rule self-evidently harms all Plaintiff States as regulated parties, preliminary injunctive relief for all is warranted.

## ARGUMENT

## I.    The States Have Established Article III Standing.

### A.    The Rule Directly Burdens Plaintiff States.

EEOC (at 11) argues that Plaintiff States lack a cognizable injury unless they show that "individual State employees will *actually seek*" abortion accommodations.  This position ignores Plaintiff States' status as directly regulated parties and blackletter law permitting pre-enforcement rule challenges.

The Rule directly regulates Plaintiff States as employers.  Where "a challenger is the subject of agency action, 'there is ordinarily little question that the action . . . has caused him injury.'"  *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 871 (8th Cir. 2013) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992)); *accord Corbett v. Transp. Sec. Admin.*, 19 F.4th 478, 483 (D.C. Cir. 2021) (standing of regulated parties "usually self-evident").  That is because parties "have a concrete interest . . . in avoiding regulatory obligations above and beyond those that can be statutorily imposed upon them."  *Iowa League*, 711 F.3d at 871.  The Rule's mandate that Plaintiff States offer abortion accommodations they do not currently provide[1] is not "speculative."  None of EEOC's contrary cases (at 13-14) involved APA challenges to a rule directly regulating parties.

EEOC further overlooks the injuries the Rule inflicts regardless of any

---

[1] *See, e.g.*, TN Decl. ¶¶ 7-8; AR Decl. ¶ 8, OK Decl. ¶ 7; ID Decl. ¶ 7; *see also* Herrington Decl., Ex. I, at ¶ 8.

2

employee or DOJ suits.  The States' costs of "[m]oving into compliance" with the Rule are alone "an injury in fact."  *Iowa League*, 711 F.3d at 870; *see Tennessee v. U.S. Dep't of Agric.*, 665 F. Supp. 3d 880, 898-99 (E.D. Tenn. 2023) (collecting cases).  Plaintiff States' declarations[2] identify costs to implement the Rule's abortion-accommodation mandate.  The Rule itself notes such costs arise independently from any accommodation expenses.  89 Fed. Reg. 29,177.

EEOC (at 15-16) claims these costs are not "definite" enough.  But EEOC's Rule *itself* posits implementation costs of the same kind testified to by the States.  89 Fed. Reg. 29,177.  And though Plaintiff States do not challenge the entirety of the Rule, "[f]or standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"  *Demarais v. Gurstel Chargo, P.A.,* 869 F.3d 685, 693 (8th Cir. 2017) (quoting *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017)).  Notably, EEOC does not (and could not) contend that its mandate would impose *zero* compliance costs on the States.  Thus, these economic harms are actual and not merely theoretical.  *Cf. Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014).  EEOC's counter (at 15-16)—that Plaintiff States' employees commonly engage in compliance activities—would render this Circuit's compliance-cost standing cases a dead letter.

The Rule also injures the States by (a) interfering in their relationship with their employees, *see* U.S. Const. amend. X, and (b) impeding States'

---

[2] *See, e.g.*, TN Decl. ¶ 9; AR Decl. ¶ 9; OK Decl. ¶ 8; ID Decl. ¶ 8.

3

messaging on abortion by requiring them to provide notice of abortion accommodations, 89 Fed. Reg. 29,164. *Cf. Garcetti v. Ceballos*, 547 U.S. 410, 418, 422 (2006) (government employers "need a significant degree of control over their employee's words and actions"). These are sovereign injuries. And States' interests in protecting life extend beyond restricting in-State abortions to ensuring State resources don't facilitate out-of-state abortions. *See, e.g.*, Ark. Const. amend. LXVIII, § 2; Tenn. Code Ann. § 71-5-157. EEOC disputes that the APA and constitution "ha[ve] been violated," but that response "goes to the *merits*," "not to constitutional standing." *Am. Farm Bur. Fed'n. v. E.P.A.*, 836 F.3d 963, 968 (8th Cir. 2016) (citation omitted).

### B. The States Satisfy Redressability and Causation.

EEOC (at 19-20) argues that preliminary relief would not redress Plaintiff States' harms because DOJ or private plaintiffs ultimately bring PWFA suits. EEOC also contests causation for similar reasons. As just discussed, these arguments overlook the compliance harms EEOC's Rule plainly inflicts.

That aside, Plaintiff States need only show "'some connection' between the [EEOC]" and "enforcement of the challenged [rule]." *Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957 (8th Cir. 2015); *Whole Women's Health v. Jackson*, 595 U.S. 30, 45-46 (2021). EEOC extensively enforces the PWFA. *All* PWFA charges must be filed first with EEOC. 42 U.S.C. §§ 2000gg-2(a)(1), 2000e-5(e)(1). EEOC then investigates and "shall

dismiss the charge" if "there is not reasonable cause to believe that the charge is true." *Id.* § 2000e-5(b); Hudson Decl. ¶¶ 3-5.  Only after a determination of reasonable cause (~3% of cases) would EEOC send a matter to DOJ.  This is true even for state employers: EEOC receives, investigates, and "refer[s]" charges for such suits.  Opp'n 6.  Prohibiting EEOC from taking these steps would grant Plaintiff States "meaningful if not total relief" from the abortion-accommodation mandate; "a concomitant declaration that the [Rule is invalid] would handle the rest." *Lavin v. Husted*, 689 F.3d 543, 546 (6th Cir. 2012).

EEOC's remaining arguments (at 19-20) also fail.  That others may seek to impermissibly enforce the PWFA does not strip Plaintiff States of their standing to vindicate injuries the unlawful Rule separately inflicts.  EEOC's speculation that other laws may be construed to require abortion accommodations is unpersuasive given the lack of "any Title VII cases that ruled against the employer" in a case involving abortion leave.  89 Fed. Reg. 29,105.  It also conflicts with EEOC's separate insistence (at 14-15) that no abortion-related suits are likely.  And even if the federal government can sue States, private parties cannot—yet the challenged portion of the Rule directs otherwise.

## C.    This Case Is Ripe.

EEOC (at 21) principally contests ripeness on the ground that this case raises "[h]ighly [f]act-[s]pecific" disputes.  But the only dispute at issue is whether the Rule—which directly regulates Plaintiff States—exceeds EEOC's

statutory or constitutional authority or otherwise violates the APA.  Those are pure "questions of law" amenable to immediate resolution.  *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 537 (8th Cir. 2006) (statutory interpretation); *Nevada v. Dep't of Energy*, 457 F.3d 78, 85 (D.C. Cir. 2006) (arbitrary and capricious analysis).  And as discussed, the rule "create[s] new regulatory obligations" on Plaintiff States that will trigger immediately.  *Iowa League*, 711 F.3d at 868.  EEOC nowhere disputes that the Rule is "a final, reviewable action under the APA."  *Am. Farm Bur. Fed'n.*, 836 F.3d at 969.  Thus, "[f]or essentially the same reasons," EEOC's "decision is ripe for review."  *Id.*

## II.   The States Are Likely to Succeed on the Merits.

### A.   The Final Rule Exceeds EEOC's Statutory Authority.

**1. The Text.**  Best read, the PWFA does not permit EEOC to require abortion accommodations.  PI Br. 14-16.

EEOC (at 30-31) agrees that the PWFA's "text, not the preferences expressed by certain legislators," controls the statutory analysis.  Yet EEOC nowhere addresses what "known limitations related to … pregnancy, childbirth, or related medical conditions" means, or how an abortion procedure is a "medical condition."  42 U.S.C. § 2000gg-1(1).  Instead, EEOC (at 27-28, 30) insists that the term "pregnancy" itself somehow includes abortion.  But the "termination of a pregnancy" cannot be "pregnancy."  Nor is abortion a "*pregnancy-related* … medical condition" since it *ends* a pregnancy.  *Cf. In re Union*

6

*Pac. R.R. Emp't Practices Litig.*, 479 F.3d 936, 942 (8th Cir. 2007). EEOC's argument (at 27-28) that an employee "seeking an abortion" requests an accommodation "on account of their pregnancy" equates inverse concepts, ignores the plain text, and distorts "dictum" about the PDA that could "settle[] nothing" about the PWFA's distinct wording. *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 351 n.12 (2005).

Even assuming the phrase "pregnancy, childbirth, or related medical conditions" encompasses abortion, the PWFA only requires accommodations of "known limitations." 42 U.S.C. § 2000gg(4). And as defined by the PWFA, "known limitation[]" does not require accommodation of an abortion unless it is *both* a "physical or mental condition" *and* "pregnancy, childbirth, or [a] related medical condition[]." *Id.* EEOC (at 28-29) has no answer except to ignore the definition of "known limitation."

EEOC wrongly suggests (at 29-30) that Plaintiff States' interpretation precludes coverage of any *elective* procedure and check-ups. Each of EEOC's exemplar procedures—amniocentesis, cesarean section, and ultrasound—follows a diagnosis of medical advisability "arising out of pregnancy, childbirth, or related medical conditions."[3] Likewise, "regular check-ups

---

[3] *See, e.g.*, Amniocentesis, Mayo Clinic, https://perma.cc/LB9F-5CAC (describing the reasons the procedure is performed, including after a screening test "showed a high risk" of Down syndrome); C-section, Mayo Clinic, https://perma.cc/3KD3-9LHL (listing medical reasons for performance).

during pregnancy" reflect a need for prenatal care—a "state of health," *see* PI Br. 14-15, arising from pregnancy.  *See* Prenatal care: 1st trimester visits, Mayo Clinic, https://perma.cc/5JB8-WXLC.  By contrast, an elective abortion terminates fetal life for reasons unrelated to maternal health.  PI Br. 16.

**2. Title VII.**  EEOC primarily argues (at 22-27) that (a) Title VII's reference to "pregnancy, childbirth, or related medical conditions" covers abortions, and (b) the PWFA also covers abortions because it uses the same phrase.  This logic chain fails at both steps.

*First*, EEOC does not analyze the text of Title VII or point to any binding precedent confirming that it applies to abortion.  Instead, EEOC (at 22) argues that Title VII must cover abortion because the statute elsewhere excludes any obligation for health plans to cover abortion.  Yet "[s]ometimes the better overall reading of [a] statute contains some redundancy."  *Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1350 n.5 (2020) (citation omitted).  It is more likely that Congress employed that "belt and suspenders approach" in Title VII, *id.*, given that numerous laws bar federal funding of abortion, PI Br. 22.

*Second*, Title VII's purported coverage of abortion would be relevant only if the meaning of Title VII's language were sufficiently settled to have become a "term of art" or if Title VII's and the PWFA's provisions were *in pari materia*.  *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 172-73, 323-24 (2012).  But neither is true here.

8

The meaning of Title VII's cited language is not sufficiently settled to have become a legal "term of art."  *See* Opp'n 23 (quoting *George v. McDonough*, 596 U.S. 740, 746 (2002)).  Likewise, the Supreme Court has required "overwhelming evidence" to presume congressional acquiescence in an administrative interpretation.  *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps. of Eng'rs*, 531 U.S. 159, 169 & n.5 (2001).  EEOC's "smattering of lower court opinions" and guidance documents fall short.  PI Br. 17-18 (quoting *BP p.l.c. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1541 (2021)).  Indeed, the Supreme Court has held that a "supposed judicial consensus" that "boils down to the decisions of two Courts of Appeals"—all EEOC offers—is not sufficiently "broad and unquestioned" to support congressional ratification.  *Jama*, 543 U.S. at 349, 352.  EEOC cites no contrary authority.

EEOC's invocation of *in pari materia* (at 23) also fails.  That canon "readily yields" to context.  *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 595 (2004); *Erlenbaugh v. United States*, 409 U.S. 239, 244 (1972).  Here, two different Congresses adopted Title VII's relevant language and the PWFA forty years apart.  *Cf. Erlenbaugh*, 409 U.S. at 244.  And the statutory text and structure differ in important ways.  For one, the PWFA uses "limiting words" that do not constrain the same phrase in Title VII.  *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 62-63 (2006).  *Compare* § 2000gg-1(1) ("known limitations"); § 2000gg(4) ("physical or mental condition[s]"), *with* § 2000e(k)

9

("women affected by").  In addition, the PWFA explicitly cross-references provisions of Title VII throughout.  *See, e.g.*, § 2000gg(2), (3) (defining "covered entity" to include an employer "as defined in section 2000e(b) of this title"); *see also* Sen. Bill Cassidy, Cmt. Letter 2 (Sept. 29, 2023), https://perma.cc/L4F8-K2K6 (noting "eleven [such] explicit references").  But the PWFA does not incorporate Title VII's amended pregnancy provision.  And although Congress directed that certain terms incorporated in PWFA from the ADA "shall be construed as such terms are construed" thereunder, § 2000gg(7), no provision requires incorporating constructions of § 2000e(k).

The PWFA's and Title VII's textual differences reflect the statutes' distinct purposes (PI Br. 20-21)—also cutting against reading them together.  *See Erlenbaugh*, 409 U.S. at 244-48; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 315-16 (2006) (declining to apply prior construction of identical term in a different statute).  EEOC's high-level description of accommodation law as "a species of anti-discrimination law" and the PWFA's history of filling a "gap" left by the PDA, ADA, and FMLA (at 27) do not rebut the legal and practical distinctions between the two bodies of law.  PI Br. 20-21.

**3. Legislative History.**  EEOC (at 31) relies on legislators' statements opposing the PWFA "because it covers abortions."  But those statements arose in the context of an earlier version of the PWFA bill that did not "incorporate the religious-organization protection from Title VII."  H. Rep. 117-27, at 59;

*see also* 167 Cong. Rec. H2228-29 (2021) (similar); *id.* at H2325 (similar); 42 U.S.C. § 2000gg-5(b).  Though a senator later raised a similar concern about abortion coverage, the response of the chief Senate sponsors devastates EEOC's accounting of congressional intent: *both* responded that the PWFA *would not authorize* the EEOC to "issue any regulation that requires abortion leave."  168 Cong. Rec. S7049-51 (2022).  That express exchange with the PWFA's lead sponsors shortly before the bill's bipartisan passage should control the congressional-intent inquiry—not EEOC's speculation that Congress meant to incorporate scant lower court opinions about a different statute.

**4. Deference.**  Even if EEOC (at 32) doesn't seek deference, the major-questions doctrine helps confirm "the text's most natural interpretation." *Biden v. Nebraska*, 143 S. Ct. 2355, 2376, 2383-84 (2023) (Barrett, J., concurring).  EEOC (at 32-33) disputes that this case raises sufficiently "major" questions.  But abortion is of "great social significance," *Dobbs v. Jackson Whole Women's Health*, 597 U.S. 215, 300 (2022), and EEOC's mandate is "novel and fundamentally different" than any federal abortion law before it.  *Biden*, 143 S. Ct. at 2369.  EEOC needs clear authority from Congress but lacks it.

## B.     The Final Rule Violates the U.S. Constitution.

The Rule's constitutional defects independently render it unlawful and counsel against EEOC's problematic interpretation of the PWFA.  *Union Pac. R.R. Co. v. U.S. Dep't of Homeland Sec.*, 738 F.3d 885, 893 (8th Cir. 2013).

**1. Sovereignty.**  EEOC (at 31) is wrong that Article I gives Congress power to hamper States' prerogatives at will.  Rather, though Congress may sometimes regulate the States as employers, it cannot do so in a way "that is destructive of state sovereignty." *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 554 (1985).  Here, the sovereignty harms are patent:  The Rule requires *the Plaintiff State themselves* to make—and bear the cost of—accommodations that conflict with State restrictions on funding abortions, including those obtained in a state where they are legal, *see, e.g.*, Tenn. Code Ann. §§ 6-56-113, 5-9-115, as well as State policies "avoid[ing] the direct *or indirect* use of state funds to promote or support elective abortions," *id.* § 71-5-157 (emphasis added).  *See also* Ark. Const. amend. LXVIII, § 2.  Such interference "alters the balance between federal and state" abortion regulation, requiring clear Congressional direction, *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 764 (2021), which doesn't exist here, PI Br. 24.

**2. Section 5.**  Congress also cannot abrogate sovereign immunity except to "enforce the provisions of the Fourteenth Amendment." *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997).  EEOC does not contest that the Rule encompasses a right to abortion that the Fourteenth Amendment does not protect. Opp'n 40-44; *cf.* PI Br. 26.  Instead, it equates regulation of abortion with sex discrimination.  *Dobbs* forecloses this approach.  597 U.S. at 236.

**3. The First Amendment.**  EEOC's cited authority (at 36) confirms that

"[a] government entity has the right to speak for itself" and is "entitled to say what it wishes" and "to select the views that it wants to express." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-68 (2009) (cleaned up).   Yet EEOC's Rule would compel Plaintiff States and other non-governmental employers to speak inconsistently with their policies and/or consciences.  EEOC's counter (at 37-38)—that the Rule permissibly regulates conduct—conflicts with the Rule's recognition that employer statements may violate the Rule "depend[ing] on the language of the statement."  89 Fed. Reg. 29,141.

### C.    The Final Rule is Arbitrary and Capricious.

EEOC's cited consideration of federalism concerns (at 35) simply downplayed the state-law conflicts Tennessee identified.  EEOC's other response (at 35)—that States have not previously needed to violate their own abortion laws—ignores that States generally could not prohibit abortions before *Dobbs*.

EEOC does not dispute that its definition of prohibited retaliation expands to "harassment" and facially limits the content of workplace speech.  PI Br. 29-30.  EEOC's choice to punt commenters' concerns to later does not satisfy its obligation to provide meaningful compliance instructions now.  *See Bloomberg L.P. v. SEC*, 45 F.4th 462, 476-77 (D.C. Cir. 2022).

EEOC (at 45) eventually agrees that the APA governs agencies' discussion of regulatory burdens.  EEOC again blames commenters' lack of data for its failure to account for *any* increased costs in States with existing PWFA

statutes.  But EEOC (at 45) concedes it had data on the average costs of ac-commodations—it just declined to assess the costs of its abortion-accommo-dation mandate for swaths of employers.  And EEOC still cannot explain what additional "evidence" it needed to confirm that state laws that do not require abortion accommodations mean what they say.  EEOC's cost-benefit conclu-sion (at 46) that "covered entities will [not] need legal advice" is belied by its mantra that employers can later work through a plethora of difficult legal issues on a "case-by-case basis."  EEOC offers no response.

## III.   The Equities Favor the Plaintiff States.

The balance of equities favors the States.  PI Br. 34-35.  EEOC's argu-ment (at 47) that the States are not harmed rests on its mistaken understanding that the States assert only speculative injuries.  *See supra* I.A.  By contrast, neither EEOC nor the public is harmed by suspending enforcement of an un-lawfully promulgated rule.  *Dakotans for Health v. Noem*, 52 F.4th 381, 392 (8th Cir. 2022); PI Br. 35.  That is particularly so given EEOC's insistence (at 15) that abortion accommodations have been—and will continue to be—rare.

## IV.   All Plaintiff States Are Entitled to Relief.

EEOC's proposed limiting of 5 U.S.C. § 705 (at 49-50) ignores the stat-utory text, which expressly allows courts to "postpone the effective date of an agency action."  Courts thus may stay the effective date of a Rule's unlawful requirements, and this relief need not be "party-restricted."  *Career Colls. &*

14

*Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024). This result tracks the difference between the APA context—where vacatur of a rule "for everyone" is the normal remedy, *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 52 (D.D.C. 2020) (K.B. Jackson, J.) (citation omitted); *see Career Colls.*, 98 F.4th at 255 (collecting authorities)—and non-APA cases involving requests for equitable relief that flow to particular parties, *cf., e.g.*, *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 928-34 (2024) (Kavanaugh, J., concurring).

Nor do EEOC's proposed equitable limits on Plaintiff States' remedies make sense on their own terms. All Plaintiff States are directly regulated by the Rule and thus suffer harm from the Rule's unlawful abortion-accommodation mandate. EEOC's proposed evidentiary requirement (at 50) disregards Plaintiffs States' self-evident injury as regulated parties subject to a new, unlawful federal requirement and conflicts with this Circuit's precedents granting APA relief to regulated parties regardless of whether they offer fact declarations on irreparable harm. *See, e.g.*, *Nebraska v. Biden*, 52 F.4th 1044, 1048 (8th Cir. 2022). And because EEOC's abortion-accommodation mandate violates the PWFA across the board, the scope of any injunction should not turn on where accommodated abortions are performed.

## CONCLUSION

This Court should grant Plaintiff States' motion for preliminary relief.

May 22, 2024                           Respectfully submitted,


JONATHAN SKRMETTI                      TIM GRIFFIN
  Tennessee Attorney General             Arkansas Attorney General
  and Reporter

/s/ *Whitney Hermandorfer*             /s/ *Nicholas J. Bronni*
WHITNEY D. HERMANDORFER*               NICHOLAS J. BRONNI (2016097)
  Director of Strategic Litigation       Solicitor General
REED N. SMITH*                         DYLAN L. JACOBS (2016167)
  Assistant Attorney General             Deputy Solicitor General
VIRGINIA N. ADAMSON*                   ASHER STEINBERG (2019058)
  Strategic Litigation Counsel &         Senior Assistant Solicitor General
  Assistant Solicitor General
JOSHUA D. MINCHIN*
  Honors Fellow, Office of the
  Solicitor General



OFFICE OF THE TENNESSEE               OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL                      ATTORNEY GENERAL
P.O. Box 20207                        323 Center Street, Suite 200
Nashville, Tennessee 37202            Little Rock, Arkansas 72201
(615) 741-8726                        (501) 682-6302
Whitney.Hermandorfer@ag.tn.gov        Nicholas.Bronni@arkansasag.gov

*Motion for admission *Pro Hac        *Counsel for Plaintiff State of Arkansas*
Vice* under Local Rule 83.5(d) forth-
coming

*Counsel for Plaintiff State of Ten-
nessee*

16

STEVE MARSHALL
  Attorney General

/s/ *Edmund G. LaCour, Jr.*
EDMUND G. LACOUR, JR.*
Solicitor General
OFFICE OF THE ALABAMA
ATTORNEY GENERAL
501 Washington Avenue
P.O. Box 300152
Montgomery, AL 36130
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@
  AlabamaAG.gov

*Motion for admission *Pro Hac Vice* under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of Alabama*

ASHLEY MOODY
  Attorney General

/s/ *Natalie Christmas*
NATALIE CHRISTMAS*
Senior Counselor
OFFICE OF THE FLORIDA ATTORNEY
GENERAL
PL-01, The Capitol
Tallahassee, FL 32399
Tel.: (850) 414-3300
Natalie.christmas@myfloridale-
gal.com

*Motion for admission *Pro Hac Vice* under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of Florida*

17

CHRISTOPHER CARR
  Attorney General

/s/ *Stephen Petrany*
STEPHEN PETRANY*
Solicitor General
OFFICE OF THE ATTORNEY GENERAL
OF GEORGIA
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Motion for admission *Pro Hac Vice* under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of Georgia*

RAÚL R. LABRADOR
  Attorney General

/s/ *Joshua N. Turner*
JOSHUA N. TURNER*
Chief of Constitutional Litigation
and Policy
ALAN M. HURST*
Solicitor General
OFFICE OF THE IDAHO ATTORNEY
GENERAL
P.O. Box 83720
Boise, Idaho 83720
Tel: (208) 334-2400
josh.turner@ag.idaho.gov

*Motion for admission *Pro Hac Vice* under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of Idaho*

18

THEODORE E. ROKITA
  Attorney General

/s/ *James A. Barta*
JAMES A. BARTA*
Solicitor General
OFFICE OF THE ATTORNEY GEN-
ERAL OF INDIANA
IGC South, Fifth Floor
302 W. Washington St.
Indianapolis, Indiana 46204
Telephone: (317) 232-0709
James.Barta@atg.in.gov

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcom-
ing

*Counsel for Plaintiff State of Indiana*

BRENNA BIRD
  Attorney General

/s/ *Eric H. Wessan*
ERIC H. WESSAN*
Solicitor General
OFFICE OF THE IOWA ATTORNEY
GENERAL
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
Eric.Wessan@ag.iowa.gov

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcom-
ing

*Counsel for Plaintiff State of Iowa*

KRIS W. KOBACH
  Attorney General

/s/ *Erin Gaide*
ERIN GAIDE*
Assistant Attorney General
OFFICE OF THE KANSAS ATTORNEY
GENERAL
120 SW 10th Ave.
Topeka, KS 66612
(785) 296-7109
erin.gaide@ag.ks.gov

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of Kansas*

ANDREW BAILEY
  Attorney General

/s/ *Joshua M. Divine*
JOSHUA M. DIVINE*
Solicitor General
MISSOURI ATTORNEY GENERAL'S
OFFICE
Post Office Box 899
Jefferson City, MO 65102
Tel. (573) 751-1800
Fax. (573) 751-0774
josh.divine@ago.mo.gov

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of Missouri*

MICHAEL T. HILGERS
  Attorney General

/s/ *Lincoln J. Korell*
LINCOLN J. KORELL\*
Assistant Solicitor General
OFFICE OF THE ATTORNEY GENERAL
OF
NEBRASKA
2115 State Capitol
Lincoln, Nebraska 68509
(402) 471-2682
lincoln.korell@nebraska.gov

\*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of Nebraska*

DREW WRIGLEY
  Attorney General

/s/ *Philip Axt*
PHILIP AXT\*
Solicitor General
OFFICE OF NORTH DAKOTA ATTORNEY GENERAL
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
Telephone: (701) 328-2210
pjaxt@nd.gov

\*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of North Dakota*

21

GENTNER DRUMMOND
  Attorney General

/s/ *Garry M. Gaskins, II*
GARRY M. GASKINS, II*
Solicitor General
OKLAHOMA OFFICE OF THE ATTOR-
NEY GENERAL
313 NE 21st Street,
Oklahoma City, OK 73105
405-312-2451
Garry.Gaskins@oag.ok.gov

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcom-
ing

*Counsel for Plaintiff State of Okla-
homa*

ALAN WILSON
  Attorney General

/s/ *Joseph D. Spate*
JOSEPH D. SPATE*
Assistant Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL
STATE OF SOUTH CAROLINA
1000 Assembly Street
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcom-
ing

*Counsel for Plaintiff State of South
Carolina*

22

MARTY J. JACKLEY
  Attorney General

/s/ *Grant M. Flynn*
GRANT M. FLYNN*
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
STATE OF SOUTH DAKOTA
1302 E. Hwy. 14, Suite #1
Pierre, SD  57501
(605) 773-3215
grant.flynn@state.sd.us

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of South Dakota*

SEAN REYES
  Attorney General

/s/ *Lance F. Sorenson*
LANCE F. SORENSON*
Assistant Utah Attorney General
UTAH ATTORNEY GENERAL
160 East 300 South, 6th floor
PO Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0100
lancesorenson@agutah.gov

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcoming

*Counsel for Plaintiff State of Utah*

PATRICK MORRISEY
  Attorney General

/s/ *Curtis R. A. Capehart*
CURTIS R. A. CAPEHART*
Deputy Attorney General
OFFICE OF THE WEST VIRGINIA AT-
TORNEY GENERAL
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305
Telephone: (304) 558-2021
Fax: (304) 558-0140
curtis.r.a.capehart@wvago.gov

*Motion for admission *Pro Hac Vice*
under Local Rule 83.5(d) forthcom-
ing

*Counsel for Plaintiff State of West
Virginia*